## No. 13,344.

## STATE OF LOUISIANA vs. FELIX ROBINSON ET AL.

### SYLLABUS.

1. If, in a trial for felonious homicide, evidence of the dangerous and violent character of deceased, whether or not shown to have been known by defendant, be admissible to enable the jury to form its own conclusion as to which party to the difficulty was the aggressor, a bill of exceptions taken to its exclusion by the court should show affirmatively the existence of the conditions necessary to warrant its admission.

2. When two or more persons are jointly indicted for the commission of one and the same offense the confession of one made in the absence of the other implicating himself and others may be properly admitted in evidence, but it is to be received in evidence only against the party making it, and the jury should be so instructed.

3. Though in a criminal case, where the prosecution calls a witness who proves hostile, the District Attorney may, in a proper case and in a proper manner, prove a contradictory statement made by him on a former occasion, it should not be received as substantive, independent and criminative evidence of the fact stated therein against the accused, but only as *rem ipsam* and to affect the credibility of the witness himself.

4. The simple fact of itself that a witness on the stand (as a witness placed there by the District Attorney for the State) may have stated on the trial something additional to what he had stated in his testimony given before the coroner's inquest, but not inconsistent therewith or contradictory thereto,

State vs. Felix Robinson et al.

does not warrant the prosecuting officer in seeking to discredit him. The witness may not have been questioned relatively to the point and may be perfectly trustworthy and truthful.

5. Where the accused in his bill of exceptions makes a minute recital of the evidence claimed to have been received and of the facts claimed to have been established, the court should not dispose of the matter by simply declaring that the statements made were only the prisoner's version of the testimony. It should make its own recital of the testimony or make specific denials. State vs. Wright, 48th Ann., 1531-1532.

6. An instruction by the judge to a witness to "tell all you heard and said," may be the means of injecting inadmissible testimony, the effects of which can not be entirely cured by directing the jury to disregard what was improper.

7. The declaration by a judge in his *addendum* to a bill of exceptions, that there was nothing to which any exceptions or objections could be levelled, is a mere conclusion by him as to matters which it is the object of the bill to have the appellate court itself determine.

8. It is a dangerous thing for a judge, in charging a jury, to assume broad premises, and upon the assumption of the existence of such premises to announce a fixed consequence of law to flow and result therefrom. It is of the utmost importance when a judge declares to a jury in terms that, under a given assumed state of facts to be found by it, the defendant in a criminal action would be the aggressor and would be cut off from the rights of urging self-defense; that the state of facts assumed as the predicate for such a conclusion should be of such precise character as to lead up in no uncertain way to the result announced.

A PPEAL from the Twelfth Judicial District, Parish of Calcasieu —*Read, J.*

*M. J. Cunningham,* Attorney General, (*Charles M. Cunningham,* of Counsel), for Plaintiff, Appellee.

*Daniel B. Gorham* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J. The indictment charges that Felix Robinson and Major Johnson, at the parish of Calcasieu, on the 8th of January, in the year of our Lord, one thousand, eight hundred and ninety-nine, did wilfully, feloniously and of their malice aforethought, kill and murder one Mose Butler.

Johnson filed a motion for a severance which was refused. No bill of exceptions was taken. The parties were tried together. The jury found Felix Robinson guilty as charged, without capital punishment, and Johnson guilty of manslaughter.

Robinson, sentenced to imprisonment for life, after an unsuccessful application for a new trial, appealed. There was some delay in the filing of the transcript in this cause, but it was not imputable to appellant. During the progress of the trial, five bills of exception were reserved.

The first bill is to the refusal of the court to permit Robinson to show by a witness that the deceased, Butler, had a general reputation for being a dangerous and vindictive man when aroused, and had been shown to have previously killed a man. In the bill, defendant asserted that at the time this testimony was offered, a proper foundation for receiving the same had been laid.

That statement reaches us as the mere conclusion of the defendant, and we are not informed as to what facts this conclusion was based upon.

The district judge, at the foot of the bill makes the following statement:—

"Accused had no right to hurt deceased on account of character and this could only be introduced for the purpose of determining whether or not a reasonable man actuated by the conditions appearing to him to exist at the time, would be excusable in employing violence."

The District Attorney had objected to the testimony on the ground that the proper foundation had not been laid as it had not been shown that the accused was acquainted with this general reputation. In reference to that position the court said that matters whereof he was ignorant could not actuate him in any manner. It mattered not what Butler's character really was—the point of interest was to know what defendant had reason to believe it to be. He, himself, was on the stand and could have testified thereto. In addition to this, it had been shown by accused and others that deceased was a very recent arrival in that particular neighborhood.

The second bill recites that on the trial, the District Attorney offered in evidence the testimony of the co-defendant, Johnson, given before the coroner's inquest, before a charge had been preferred against him, over the body of Mose Butler, whom the accused, Robinson, was charged with having murdered; that defendant objected to this evidence, on the ground, first; that said testimony was taken out of the presence of the accused, Robinson, and not contradictorily with him, and was as to him, an *ex parte* proceeding, and was not a confession, but the sworn evidence of Johnson; second, that said Ma-

jor Johnson was present in court and charged with the murder of Mose Butler, together with Robinson, and the District Attorney, if he chose to make him (Johnson), his witness, he should do so as directed by law, and accused, Robinson, would then and there have had the right to cross-examine him. That the objections were overruled and said *ex parte* evidence was read to the jury.

In reference to this bill the court said it was entirely erroneous, as the court sustained the objection as to the accused, Robinson, and instructed the jury not to consider the same at all in so far as it might affect Robinson.

The third bill was to the refusal of the court to grant a new trial.

In the fourth bill, it is recited that the District Attorney, after having placed Glass Johnson on the stand as a witness for the State and interrogated him as to the case, asked him the following question:

"Is it not a fact that being examined as a witness before the coroner's inquest held by Dr. Martin on the body of the deceased, Mose Butler, on the 9th or 10th of January, 1899, you did testify differently from your testimony given this time," and then offered to have said evidence read to the jury, to which counsel for defendant objected.

First:—Because said question was leading.

Second:—Because, if designed to impeach the witness, that the State was precluded therefrom, no foundation being laid therefor, and said evidence was not taken contradictorily with accused, Robinson.

"That these objections were overruled and said evidence admitted and read to the jury, and that, thereafter, the court addressing the said witness, stated 'Tell the jury what you saw and heard'; whereupon, counsel for Robinson objected to said statement unless qualified, as it would include hearsay and inadmissible evidence and requested the court to qualify the statement directed to the witness in the presence of the jury, which the court refused—to which ruling of the court given in the presence of said jury, defendant, Robinson, excepted."

The judge's *addendum* to this bill was as follows:—"Leading question was answered, because, first, if witness was favorable, it was futile to withdraw it and propound it in more general form, and if unfavorable, (and he so impressed the court), it could not prejudice accused, and second, authorities allow one taken by surprise to ask his

witness, if.he did not make a different statement on another occasion, and here occasion was specified and statement particularized.

"Again, the bill does not fully state the facts. Witness made a certain statement. State's counsel manifested and expressed surprise—called witness' attention to his previous testimony, asking the question objected to and the ruling followed. The instruction by the court, objected to herein, occurred when matters *res gestae* were being examined into, all of which transpired within a period of five minutes or less. No hearsay evidence entered into the circumstance and no hearsay evidence was being offered or considered.

"There was nothing to which any exception or objection could be levelled".

The fifth bill was to a part of the charge of the court to the jury in which it was said:

"Gambling with cards is immoral, and the law will in no wise interfere with the property rights connected with or growing out of staking at games of cards. The circumstance of winning or losing of itself creates no change of rights in the stake.

"Therefore should you find that deceased and Robinson were engaged in gambling with cards, and that a money bill constituted or contained the stake or both, or that each had a reasonable ground to believe he had a substantial right in his own stake, and did so believe, the deceased had the right to withdraw his own stake even though, if in doing so, he necessarily became possessed of the stake of his opponent but no right to retain permanently his opponent's stake or rather the value of it to the loss and injury of his opponent, and should it appear that accused, Robinson, being the opponent, undertook by forcible restraint, violence, or menace, to recover such bill without first offering or rendering deceased the amount of his stake, Robinson would, in law, be the first aggressor, and be responsible for the reasonable and direct result of such aggression, and can not plead self-defense."

The bill recites that counsel of Robinson "excepted to said charge of the court as being contrary to the law and the facts, it having been shown by every witness who testified both for the State and the defense, without a solitary exception, that deceased and accused were engaged in playing for two dollars a game; that accused placed his five dollars on the table and deceased, two dollars in silver as his stake; that the first game was won by deceased, who took up his two dollars,

leaving the five dollar bill on the table; that the second game was won by accused, thus making the games even, and the bill entirely that of ac·used, who had staked the same, whereupon, deceased grabbed the bill from the table, to which he had no right and upon being encouraged by Geese Ryan, who exclaimed 'Don't give it up, we will all die and go to hell together', at the same time reaching around his person and drawing what appeared to be a weapon, when deceased began brutally and without provocation, beating the accused and had him wedged in a corner of the house, when there was no exit nor means of escape, when about that time a chair came down striking one or both the deceased and accused, at which time, accused fired three shots which caused the death of deceased, all of which is verified by the evidence taken before the coroner's inquest, offered by the District Attorney on the trial hereof, of the following witnesses, viz: that of Willie Ross, Glass Johnson, Major Johnson, Jesse Knox and Tom Smith, annexed hereto and made a part hereof and all of which corroborates the fact that the five dollar bill belonged to accused, had been staked by him, and belonged to him when forcibly and feloniously taken away by deceased, Mose Butler; that the charge of the court intimating that accused was either the assailant or not the owner of the money was manifestly erroneous, and caused the conviction of accused."

The judge made the following *addendum* at the foot of the bill:

"This long statement of fact is not endorsed by the court as being correct, and, certainly, can serve no other purpose than to place before the appellate court counsel's own view of the testimony. A copy of the charge goes up with the record, and, if erroneous, will be so declared, and if sound, will be sustained. There was at the time of reading same to the jury no objection made to the effect—that it had any tendency to influence the minds of the jury as to their finding of the facts. I did not then, nor do I now, after hearing the motion for new trial elaborated, see that such is the case."

The sixth bill recites that on the trial "the witness, Jesse Knox, having been examined on behalf of defendant, Robinson, after being cross examined by the District Attorney, said officer offered to have the evidence of said Knox taken before the coroner's inquest, annexed to the bill, read to said witness in the presence of the jury, to which accused Robinson objected.

"1st. Because said evidence was not taken contradictorily with

accused, nor in his presence, and was, in so far as accused was concerned, *res inter alios acta.*

"2nd. That said witness being in court and testifying, if it was scught to contradict or impeach him the foundation must first be laid therefor, which was not done; and, if to contradict as to any particular statement, the witness' attention should be called thereto, and, if denied, only that part and not the whole testimony should be read, which objections were overruled by the court, and said evidence read in the presence of the jury."

The court made the following statement in reference to this bill:

"The action of State's counsel was for the purpose of attacking the value of the testimony of Knox, and so far as the attention of the court was called thereto, the foundation was fully laid, and it was unnecessary that previous statements of the witness should have been made in the presence and hearing of the accused, nor even to have been a sworn statement of the witness previously made.

"He was asked if he had stated particular facts in his testimony, given before the coroner's inquest, at a certain time. He said that he had done so. His said testimony was read to him in full, for the purpose of showing what he had testified to before said inquest, and he said he did not know whether it was so written down at the time or not.

"And if the foundation was insufficient in any particular, accused counsel failed to call the attention of the court thereto then or at any other time."

There is a certain class of cases in which uncommunicated threats on the part of the deceased are sometimes received in evidence in favor of a party charged with murder when the accused sets up self-defense. The evidence is not received for the purpose of showing that defendant's conduct was influenced by them, (for a person can, of course, not be influenced by a thing of which he has no knowledge), but to enable the jury to form its own conclusions as to who was the aggressor in the encounter, which resulted in the homicide, when there is doubt on that subject. (Rice on Criminal Evidence, Chap. XLIV, Sec. 362, *et seq.*)

The reasons which go to make such testimony admissible should lead, it would seem, logically to authorizing the introduction, under similar conditions and for the same purpose, of testimony to show the

dangerous and violent character of the deceased, although the accused should have been ignorant of such at the time of the difficulty.

As such testimony is only exceptionally admissible, a bill of exceptions taken to its exclusion by the court in a particular case should show affirmatively the existence of the conditions which were necessary to warrant demand for its admission.

The testimony of Robinson's co-defendant, Johnson, taken at the time of the holding of the coroner's inquest, was admitted solely as against Johnson, and the jury was instructed not to consider it at all as it might affect Robinson.

Johnson, though indicted subsequently for the murder of Butler, was not at that time under any charge—his testimony was given as a witness. It may be true that the evidence was inadmissible even as against Johnson, but the record does not show that he reserved any bill of exception to it.

Appellant complains that a mere instruction to the jury not to consider the evidence or give it effect against him, amounts practically to nothing; for as a fact when it went to the jury it necessarily influenced it against him. Conceding this to be true it is a matter which cannot be avoided. It has been frequently held that when testimony is relevant and proper, but only for a limited and specific purpose, the court is forced to permit its introduction though the jury may, in fact, and in spite of the court's instructions use it beyond its legitimate scope, and it may greatly prejudice the accused.

In State vs. Donelon, 45th Ann., 745, it was held to be "a settled rule of law that when two or more persons are jointly indicted for the commission of one and the same offense, the confession of one, made in the absence of the other implicating himself and others, may be properly admitted in evidence, but it is to be received in evidence only against the party making it, and the jury should be so instructed."

The ruling in the Donelon case was reaffirmed in State vs. Thibodeaux, 45th Ann., 604.

In State vs. Lee, 46th Ann., 628, this court said: "The general rule is that persons jointly indicted are not entitled to a severance of trial as a matter of right, though the trial judge may, in the exercise of his discretion, grant a severance." (State vs. Leonard, 6th Ann., 420; State vs. Cazean, 8th Ann., 109; 1st Bishop Cr. Pr., Sec. 1019; Wharton Crim. Pl., Sec. 309.)

It is proper for the judge to grant a severance in case the confession

of one jointly indicted may implicate both—in case the prosecution intends to offer same on trial. (1 Bishop Cr. Pr. 1019; Wharton Crim. Pl., 310.)"

The defendant, Robinson, did not apply for a severance in his case —had he done so the court would, doubtless, have taken steps to ascertain from the District Attorney whether he proposed to introduce a confession of Johnson.

As matters stand, as the District Attorney had the legal right to introduce the testimony he did, we can not control the matter. There may be cases where controlling motives would cause the State to insist upon the joint trial of parties, jointly indicted for the same offense, but in the absence of good reasons for so doing, it is better for it to consent than to object to a severance, where the confession of one defendant is likely to subject the other to the unauthorized influence of the jury of such a confession.

Appellant complains of the district judge having told a State witness on the stand to "tell the jury what you saw and heard". He urges that such a method of eliciting testimony is calculated to bring out facts before the jury which are totally inadmissible, and to introduce hearsay evidence, before the accused could protect himself, as he would not know what the witnesses would attempt to do under such circumstances, and that if improper testimony should reach the jury in this way, matters would not and could not be cured by striking it out and instructing the jury not to consider it, and he states as a fact, that hearsay evidence was introduced under the general direction to the witness "to state all he knew and saw". This statement is denied by the court, and we have to accept the denial as correct. There is force in the objection of the accused to the method of examination adopted and it should not be followed. The declaration made by a judge, in his *addendum* to a bill of exceptions, that there was nothing to which any exceptions or objections could be levelled, is a mere conclusion by him as to matters which it is the object of the bill to have the appellate court itself determine.

In Conway vs. State, 118 Indiana, 482, the Supreme Court of Indiana said: "That it was no doubt true that the State might, in the proper case, contradict its witnesses by evidence of contradictory statement made out of court".

The mere fact itself, that the State had with the district court's sanction and over objections, contradicted its own witness, is no good

ground of complaint. The bill of exceptions, taken in the present proceedings on that subject, is before us in very unsatisfactory shape in the recitals, both as to the accused and as to the court.

The statement of the appellant is, that the question asked by the District Attorney of his own witness, was "is it not a fact that being examined as a witness before the coroner's inquest held by Doctor Martin on the body of the deceased, Mose Butler, on the 9th or 10th of January, 1899, you did testify differently from your testimony given 'this time', and then offered to have said evidence read to the jury, to which counsel of defendant objected—that the objection was overruled, and the evidence was admitted and read to the jury".

The court's statement upon the bill is, that the bill did not fully recite the facts—that witness made a certain statement; that the State's counsel manifested and expressed surprise and called witness' attention to his previous testimony, and asked the question objected to; that the ruling followed; that the authorities allowed one taken by surprise to ask his witness if he did not make a different statement on another occasion, and here occasion was specified and statement particularized. The subject matter complained of in this bill constituted the second ground of appellant's application for a new trial. The court in overruling it, referred to it as follows:—

"The evidence was read to the witness with reference to a fact said to have been omitted by witness in his testimony before the inquest jury, and included in his statement before jury trial. The objection was to its being read to the witness, and not to its being read to or in the hearing of the jury".

The record shows that Glass Johnson was a witness at the coroner's inquest, and that his testimony was then taken in writing—that he was placed on the stand by the District Attorney on the trial of the cause itself, as a witness for the State, but, what the testimony given by him on the latter occasion was, we do not know. It was, obviously, considered disappointing, unsatisfactory, or prejudicial, by the prosecution, but in respect to what, or to what extent it was, one or the other, does not appear. We are not informed what answer the witness gave to the question propounded to him, as to whether the testimony given by him on the trial was different from that which he gave before the coroner; whether he admitted or denied this to be a fact; nor are we informed whether, if there was a difference, it was in respect to a matter relevant and material or not. The record does show

that the evidence of the witness, taken before the coroner, was read to him, and as it was read when the trial was in progress, it was necessarily read in the presence of the jury. No announcement appears to have been made by the District Attorney when it was so read that it was to be used for any limited or qualified purpose, nor does it appear either in the judge's charge to the jury, or anywhere else, that the court directed that it be so limited or qualified. The accused objected to the testimony being read as "evidence" in the case, for the reason that it was not taken contradictorily with him, and it was hearsay.

In Smith vs. Price, 8 Watts, 447 (Rice on Criminal Ev., Sec. 236), it was held, that "a party cannot, after examining a witness, give in evidence his former testimony and declarations ostensibly to discredit him, but, in truth, to operate as independent testimony".

In People vs. Lyons, 51 Michigan, 215 (Rapelje's Law of Witnesses, Sec. 216), it was held that, in a criminal case, where the prosecutor calls a witness, who proves to be hostile, the prosecution may prove what he said on a former occasion, not as evidence of the facts sought to be proven, but to show that he has made conflicting statements, and thus affect credibility. In State vs. Reed, 49th Ann., 709, this court said: "When the State proposes to impeach or attack the credibility of one of the defendant's witnesses, by proof of statements made by him out of court, conflicting with those given on the stand, it is the duty of the District Attorney to state to the witness what those prior statements were, and when, and where made, and enquire of him whether or not he made the same. If the witness acknowledges to have made them, the prior statements, so admitted by him to have been made, should not be permitted to go to the jury as criminative evidence against the accused.

"The admissions should not carry the prior statements to the jury, as substantive evidence against the prisoner, but, on the contrary, the court should specially and expressly caution the jury from giving it that effect."

The district judge, in his reasons for refusing a new trial, states that the witness on trial of the cause stated a fact which had not been stated by him when he gave his testimony before the coroner; that the District Attorney appeared surprised and expressed surprise thereat; but we do not think that that simple fact authorized the District Attorney to read before the jury the whole evidence, which the witness had given at the time of the inquest, or, to attempt to discredit the

witness by reason of that fact. The witness may not have been questioned as to that point by the coroner, and his testimony, before the jury, may have been perfectly trustworthy and truthful. We do not think the District Attorney was warranted, after he had placed the witness on the stand as his own witness, to discredit him, simply because he had failed to testify as he had expected him to do, and had stated something weakening the State's case, not inconsistent with or contradictory to what he had stated before, but simply additional thereto. Rapalje, Sec. 212, says: that ordinarily the party having called the witness must take him for better or worse and must be bound by all his statements on the stand, unless the witness has deceived the party, promising to testify one way and swearing another, and the party is, himself, entirely innocent, calling him in good faith and fully believing him to be a friendly and not a hostile witness. The testimony in this case was in writing and having been shown to the witness he could have been asked whether it constituted all of the evidence given by him before the coroner, or, the witness being himself on the stand, he could have been directly interrogated as to whether this particular statement, claimed by the District Attorney to be a new statement, had been made by him at the time of the inquest. In case of the witness claiming that it had been given before, even if the testimony taken before the coroner might in a proper case have been offered as a whole, to show otherwise, it should not have been introduced as independent evidence, but only a *rem ipsam* and to weaken incidentally the witness' testimony.

The course pursued by the District Attorney indicates that he deemed it important for him to have adopted it as important for the State. If important to the State it was injurious to the defendant, and if not legally permissible we must presume it to have prejudiced the accused.

The district judge, as part of his charge, charged the jury, that "gambling with cards is immoral and the law will, in no wise, interfere with the property rights connected with or growing out of staking at games of cards. The circumstances of winning or losing of itself creates no change of rights in the stake".

We understand the court to have here announced that if a criminal action should have resulted from a difficulty between parties engaged in gambling, by reason of a difference as to the ownership and possession of the stakes upon the table, the law, in testing the legal lia-

bility of the parties, would always go back to the original right of
ownership and possession of the stakes by the parties, and not consider
any change of ownership or possession thereof, resulting from the
winning or losing of the games.

Having made this announcement the court went on to say:—

"Therefore:—Should you find that deceased and Robinson were en-
gaged in gambling with cards, and that a money bill constituted or
contained the stakes of both, or that each had reasonable ground to
believe he had a substantial right as his own stake and did so believe,
the deceased had the right to withdraw his own stake, even though, in
doing so, he necessarily became possessed of the stake of his opponent,
but no right to retain permanently his opponent's stake, or, rather,
the value of it, to the loss or injury of his opponent, and should it ap-
pear that accused, Robinson, being the opponent, undertook by forcible
restraint, violence, or menace of violence, to recover such bill, without
first offering or rendering deceased the amount of his stake, Robinson
would, in law be, the first aggressor and be responsible for the reason-
able and direct result of such aggression and can not plead self-
defense".

It is a dangerous thing for a judge in charging a jury to assume
broad premises and upon the assumption of the existence of such
premises to announce a fixed consequence in law as to flow and result
from the same. It is of the utmost importance when a judge declares
to a jury in terms that under a given assumed state of facts to be
found by it, the defendant in a criminal action would be the aggressor
and would be cut off from the right of urging self-defense, that the
state of facts assumed as the predicate for such a conclusion should be
of such precise character as to lead up in no uncertain way to the re-
sult announced.

In the case at bar, the court told the jury that if the stakes upon
the table were contained in a bank note, and both and each party had
a reasonable ground to believe he had a substantial right in his own
stake, and did so believe, the deceased had the right to withdraw his
own stake even though in doing so, he, necessarily, became possessed
of the stake of his opponent. If the parties gaming had each put sep-
arate stakes upon the table, and the deceased had, upon the belief that
he had won the second game, or, in the event of a dispute as to who
had won that game, taken possession of his own separate stake, the
case would have fallen under the rule of law announced in the open-

ing portion of this part of his charge, but, if the five dollar bank note, upon the table, belonged originally to the accused, and the same had never gone into the possession of the deceased, and his only claim was of an interest therein of two dollars by reason of having won the first game, the deceased would not have been entitled under the judge's theory of the law of the case to have taken possession of the note, but, on the contrary, the defendant would have had the legal right to hold it. Defendant, in his bill, states that, the five dollar bill belonged to the accused when the parties sat down to the table.

. The district judge does not deny the correctness of that statement, but, without making any statement himself of the facts of the case, or specifying wherein the defendant's statement of facts was incorrect, contented himself with saying that the statement made by the accused was simply his version of the testimony.

We think that in the interest of justice the court should have given the accused, and this court the benefit of a statement of the facts of the case, or, at least as to the particular fact above referred to, in regard to the original ownership of the note by the accused and his continued possession of the same.

. If the facts, touching the ownership and possession of this note, were such as appellant asserts they were (and the court does not deny them to have been as stated), the court, substantially, instructed the jury in contradiction to the first part of its own charge, that if the deceased had a reasonable ground to believe and did believe he had a substantial right in the note, to the extent of two dollars, by having won the first game, he had the legal right to take possession of the note, and that if Robinson undertook, by menace of violence, forcible restraint, or violence, to recover such bill without rendering the deceased the amount of his stake, he would, in law, be the first aggressor, and be responsible for the reasonable and direct result of such aggression and cannot plead self-defense.

We think that the effect of this charge would be to impress the ordinary juror that the deceased was, in fact, legally authorized to take up the five dollar note, and that if accused attempted to recover the same by menace of violence, he was the aggressor, unless he had first offered to pay or paying the deceased the amount of his stake, and he was responsible for the reasonable and direct result of such aggression and could not defend himself upon a ground that he had acted in self-defense, and, therefore, he would be guilty of murder.

Under this charge, if the accused upon an attempt made by the deceased to take the five dollar note from the table had simply taken hold of him by the hand or wrist to prevent his doing so and the latter had thereupon violently attacked him, the accused, no matter what the nature of this attack might have been, or how much his life might have been endangered thereby, could not by reason of being an "aggressor", defend himself upon the score of a right of self-defense or self-protection.

Telling an ordinary juror that, under the assumed state of facts, the accused was the aggressor and not entitled to plead self-defense, would be understood by him as meaning he must necessarily bring in either an unqualified verdict of murder, or of murder without capital punishment, regardless of the extent of the restraint attempted to be placed by the accused upon the deceased to take the note from the table, and regardless of what may have been the course of conduct pursued by the deceased, in consequence of such restraint. It will be seen that the court declared the accused would be an aggressor and cut off from urging self-defense not only by forcible restraint or violence, but by (also) menace of violence.

We think the charge given was misleading and prejudicial and the verdict and sentence based upon it should be reversed.

For the reasons assigned it is ordered, adjudged and decreed that the verdict of the jury, and the judgment rendered therein be annulled, avoided and reversed, and it is ordered, adjudged and decreed that this cause be remanded to the district court for further proceedings according to law.