(61 South. 219.)

No. 19,747.

STATE v. BLASSENGAME.

(Feb. 17, 1913.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 1169\*)—APPEAL—PREJUDICIAL ERROR—EVIDENCE.

Where testimony concerning the occupation or connection of a defendant in a criminal case is wholly irrelevant to the issue to be tried, and is likely to operate to his prejudice, its admission is reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3088, 3130, 3137–3143; Dec. Dig. § 1169.\*]

2. HOMICIDE (§ 163\*)—EVIDENCE—REPUTATION OF DECEASED.

Testimony as to the reputation of the deceased as a dangerous man at other times and places than the time and place of his killing by the defendant on trial for his murder is properly excluded, where it does not appear that defendant knew of such reputation, and upon the finding of the trial judge that no overt act on the part of deceased had been proved.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 310–317; Dec. Dig. § 163.\*]

3. CRIMINAL LAW (§ 667\*)—RECEPTION OF EVIDENCE—REDUCTION TO WRITING.

It is within the discretion of the trial judge in a criminal case appealable to this court to order that the testimony of the witnesses to the killing and to the occurrences which immediately preceded it be taken down, to be used in case it should thereafter be needed for the purposes of bills of exception, but the defendant in such case has no right to demand that it shall be so taken down. When.

however, the defendant offers to prove threats by, or the dangerous character of, the deceased, and the testimony so offered is excluded, on the ground that no overt act on the part of the deceased has been proved, he has the right to except to such ruling, and, for the effective presentation of the question so reserved to this court, to demand that such witnesses be recalled, and required again to give their testimony in so far as it bears upon that question; the purpose of the Act No. 113 of 1896 being to enable this court to go behind the findings of the trial courts upon the questions of fact on which their rulings on questions of law are based, in order to determine the correctness vel non of such findings and rulings.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1599, 1601; Dec. Dig. § 667.*]

4. CRIMINAL LAW (§ 667*)—RECEPTION OF EVIDENCE—REDUCTION TO WRITING.

The facts which, under Act 113 of 1896 the clerk may be ordered to "take down," consist of the testimony, which is made the subject of objection, the objection thereto, and the ruling thereon.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1599, 1601; Dec. Dig. § 667.*]

5. WITNESSES (§ 37*)—COMPETENCY—KNOWLEDGE—REPUTATION.

When a witness is placed on the stand in a prosecution for murder to prove the reputation of the deceased in the community in which he lived—i. e., whether he was regarded as orderly and peaceful or turbulent and dangerous —what is called for is the opinion of the community, not that of the witness, and, when he testifies that he never heard the reputation of the deceased discussed or talked about, he disqualifies himself quoad the purposes for which he was called.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

6. CRIMINAL LAW (§ 913*)—NEW TRIAL— GROUNDS—ABSENCE OF WITNESS.

Where no application for a continuance is made, the fact that a defendant in a criminal prosecution was disappointed by the nonappearance of a witness, whom he had expected from another parish, affords no ground upon which he has the right to demand a new trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2136–2145; Dec. Dig. § 913.*]

*(Additional Syllabus by Editorial Staff.)*

7. CRIMINAL LAW (§ 673*)—TRIAL—IMPEACHING EVIDENCE—LIMITING EFFECT.

In a prosecution for murder, testimony offered for purposes of impeachment that a defense witness had said three weeks before the trial that, when defendant entered the place where the killing occurred, witness noticed that his eyes were flashing, and thought he was going to do something, that defendant reviled deceased, and shot him before witness could get hold of him, should not have been admitted without a warning that it was merely to prove that the witness had made the statements, but they were not to be taken as substantive evidence against defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1597, 1872–1876; Dec. Dig. § 673.*]

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

F. L. Blassengame was convicted of murder, and appeals. Reversed and remanded.

Murff & Mabry, of Shreveport, for appellant. R. G. Pleasant, Atty. Gen., and J. M. Foster, Dist. Atty., of Shreveport (G. A. Gondran, of Donaldsonville, of counsel), for the State.

MONROE, J. Defendant was convicted of murder without capital punishment, and he has appealed from the verdict and sentence.

[1] 1. His first bill of exception shows that while "Kid Fields," a state witness, was on the stand, the district attorney asked him:

"If the defendant was not running a near beer stand, and if he was not a partner, or had an interest, in a house of prostitution over the place where he was doing business."

The questions were objected to as irrelevant, "as an evident attack upon the character of the defendant, which he had not put at issue, and as intended to prejudice defendant before the jury." The objection was overruled, and the questions were answered, in effect, in the affirmative; the reasons assigned by the trial judge for his ruling being as follows:

"The homicide with which defendant was charged had occurred in a near beer joint [at Oil City, in Caddo parish] kept by A. J. Winston, called 'Slim Winston.' * * * Two witnesses had testified that shortly * * * before the homicide deceased * * * had had an altercation with a woman * * * about in front of the joint, * * * and that Wilson [the deceased] had * * * thrown the woman on the ground, tearing her clothes, or a large portion thereof, from her person, and more or less bruising her, and standing over her with

a drawn knife, defying others to come to her rescue or relief, and the woman was the kept prostitute or concubine of the deceased; * * * that about an hour or more after the affair * * * defendant came into Slim Winston's joint, * * * where the deceased then was, and said that any man who would assault or so maltreat a woman was a ———, or words equivalent to that, from which remark the difficulty immediately arose, * * * in which the defendant shot and instantly killed the deceased. In Oil City there was another similar saloon, or joint, * * * distant 200 or 300 yards from the one in which the homicide occurred, the lower floor of which was used as a * * * joint * * * and the upstairs as a * * * place of prostitution. By cross-examination * * * defendant brought out * * * the facts concerning the affair between Wilson, deceased, and the woman as showing, or tending to show, some justification or excuse for defendant in taking the life of Wilson, or in mitigation of it, and that defendant in taking the life of Wilson acted in defense of the woman or for her protection. At this stage of the case * * * the district attorney propounded * * * the questions * * * set forth in the bill for the purpose of showing that the defendant was the keeper of the other * * * joint, and the house upstairs over it, * * * as tending to show that defendant * * * in no way had a right to protect or defend the woman or resent assaults upon her by Wilson, or indignities inflicted on her by Wilson. The court overruled defendant's objection, * * * and permitted the witness to answer, and evidence was adduced showing that * * * defendant was the keeper of the joint and house referred to, and that he was interested in the * * * house of prostitution carried on upstairs above, and that he was in no way interested in, or connected with, the woman involved in the affair with Wilson. The question and answer were permitted for the further reason that evidence of defendant's occupation or business was admissible, and that such evidence * * * could not be legally said to operate to the prejudice of the defendant before the jury."

The assumption that evidence as to the occupation of a defendant in a criminal prosecution is per se admissible is clearly erroneous, since no evidence is admissible which is wholly irrelevant to the issue to be tried, and the admission of evidence which is, at once, irrelevant and prejudicial to the defendant, is fatal to the conviction. The view of the trial judge, as we understand it, is that the defendant by reason of his connection, whatever it may have been, with the house of prostitution which was operated above his "beer joint," and by reason of the fact that

he had no connection with the woman whom the deceased had thrown down in the street and stripped of her clothing, had no right, or was in no position, to pose as her champion, and as such, an hour or more after the event, to provoke a difficulty with the deceased on that account. But, as we understand the law, the character of his occupation had no bearing upon that question, since it would have been equally as illegal for a person otherwise occupied to have provoked the difficulty under such circumstances. The evidence in question was therefore irrelevant, and, as it must have been prejudicial in fact, it must be held to have been prejudicial in contemplation of law. The admission was therefore reversible error.

[2] 2. Ed. Pharr, a witness for defendant, testified that he had lived for about three weeks near the deceased in San Antonio some two years before the date of the giving of his testimony, and had heard nothing about his character at that time, but that, after leaving there, he had heard different persons who had known the deceased, at different places, discuss his character for peace and quietness, and that from what they had told him he knew the reputation of the deceased in that respect. He was asked to state what he knew, and the question was objected to, and the objection was sustained, on the ground that the reputation of the deceased at other times and places had no necessary bearing upon the question of his reputation at Oil City at the time of the homicide, and the judge added that the testimony was inadmissible for the further reason that no overt act on his part preceding the shooting which resulted in his death had been shown. The ruling was correct; for the object of the defendant was to show that the deceased was a dangerous man, and hence that he, defendant, was justified in assuming, with perhaps, less basis than might have been required in the case of another person, that he (deceased)

was about to make an attack upon him. As, however, the witness was not asked whether the reputation of the deceased had followed him to Oil City, or whether his reputation elsewhere was known to defendant, the latter was not in a position to make use of it as an explanation or excuse for his quick action.

"To give the reputation of the deceased in evidence which he bore in a distant community, it is necessary to show, at least, that the accused was aware of his character in such community." State v. Nash and Barnett, 45 La. Ann. 1141, 13 South. 732, 734; State v. Stewart, 45 La. Ann. 1166, 14 South. 143.

The question of the right to show the general reputation of a witness for veracity rests upon a different principle, and the case cited upon that subject has no application. The finding of the judge that no overt act on the part of the deceased had been shown was also sufficient reason for the exclusion of the testimony.

[3, 4] 3. Defendant offered to prove by J. E. Bell that about a month or two before the killing he had heard deceased say that:

"He had heard that defendant had said something about him [deceased] whipping a certain woman, and that, while defendant had denied saying such a thing, he felt that he had said it, and, if he ever crossed his path in any way, he was going to 'shoot the —— half in two.' And he drew from his pocket a pistol and said he always went prepared and would use the weapon if ever defendant crossed his path again, and that he communicated those threats to the defendant a short time before the killing—warning him against the deceased."

The testimony was objected to on the ground that:

"No overt act had been shown on the part of the deceased at the time of the killing; and on the further ground that the time was one month before the killing, and was too remote to be admissible in evidence."

The court sustained the objection, and counsel for defendant at once asked that the court stenographer take down the depositions of the witnesses for both the state and defendant on the question "whether or not the deceased was attacking defendant at the time he fired the fatal shot." The whole evidence, "up to that time" (the bill recites), "both of the state's and defendant's witnesses, was that the deceased had rushed upon the defendant, and was striking at defendant when he shot him."

The judge, in signing the bill of exception, recapitulates what he conceives to have been the facts preceding and connected with the homicide, and continues, as follows:

"There was no overt act on the part of the deceased, and there was no rushing of the deceased at the defendant. The defendant went into Slim Winston's * * * saloon, and brought on the difficulty, and fatally shot deceased before he could strike with his fist, and before he could raise his arm sufficiently to strike with his fist. The deceased had no weapons. He had in his pocket a few small silver coins, a closed pocketknife, and some buttons and other little trinkets. The court excluded the proffered evidence of threats, for the reason that no overt act of the deceased towards the defendant had been shown to authorize the admission of the proffered evidence. * * * After the proffered evidence of threats was excluded, the counsel for defendant then, for the first time, asked leave to have all the evidence taken down to show an overt act, as claimed by him, so that the evidence might be annexed to a bill of exception. The court then denied the request to have the evidence taken down, for the reason that the state in presenting its evidence in chief had examined 16 witnesses, and Bell, the witness then on the stand, was the eighth witness for the defense, and nearly all the witnesses who had been examined, both for the state and the defense, were eyewitnesses, and they had all been fully examined by the state and defense with circumstantiality of detail as to the actual difficulty and the facts leading up to it, and the trial was then at the end of two days of laborious and protracted session, and to grant the request to take down the evidence, then made for the first time, was not seasonably made, and was made too late. The question whether there was an overt act on the part of the deceased against the defendant had to be determined by considering all, or practically all, of the evidence of the state's 16 witnesses who had been examined in chief, and the evidence of defendant's 7 witnesses who had up to that time been examined, and at the time of the examination of those 23 witnesses no bill of exception had been reserved on this point, and no request at the time had been made to have the evidence bearing on the point taken down."

The court failed to see how the provisions of Act 113 of 1896 could be made available

or made to apply to the circumstances then presented, and the court did not feel that the provisions of the act required that the evidence should all be gone over again, in order that it might be taken down to be annexed to a bill of exception, as requested, and the court declined to go over the case a second time, to take down the evidence, as requested by defendant.

It will thus be seen that in a matter of vital importance the learned trial judge and the counsel for defendant differ radically as to whether a certain fact was established by the evidence, and, if the matter should stand as it is, this court would feel obliged to accept the conclusion of the judge on that subject. Whether it should or should not be accepted depends upon the interpretation to be placed on Act 113 of 1896, which reads:

"That, on the trial of all criminal cases in this state, appealable to the Supreme Court, *when an objection shall be made and a bill of exceptions reserved, the court shall, at the time and without delay, order the clerk to take down the facts upon which the bill has been retained,* which statement of facts shall be preserved among the records of the trial; and, if the case be appealed, the clerk shall attach to the bill of exceptions a certified copy thereof, which shall be taken by the appellate court as a correct statement upon which the exception is based."

We have italicized the language declaring when, and by whom, the action, and the character of the action contemplated by the statute, is to be taken. "When an objection shall be made and a bill of exception reserved, the court shall, at the time and without delay, order the clerk to take down the facts upon which the bill has been retained," is the language in question. Interpreting that language, this court has several times decided that a defendant in a criminal prosecution cannot as a matter of right demand at the beginning of the trial, or at any time before he makes an objection and reserves a bill of exception, that "the facts," thus referred to, shall be taken down. **State ex**

132 LA.—9

rel. Haab v. Judge, 104 La. 63, 28 South. 902; State v. Elia, 108 La. 554, 32 South. 476; State v. Craft, 118 La. 124, 42 South. 718.

In State v. Craft, supra, it was said:

"The question submitted by the bill is whether or not on the trial of a criminal case counsel for the accused has the right to require that all the testimony that should be given by eyewitnesses to the killing should be taken in writing, by anticipation, to meet the possible future use of his client, should an offer be subsequently made to introduce evidence of threats or previous difficulties. We think the right claimed by the accused went beyond that accorded by Act No. 113 of 1896, and the district judge was warranted in not recognizing it." .

It is, however, the evident purpose of the statute in question to make the appeals "in all criminal cases, * * * appealable to the Supreme Court," effective as to the rulings of the trial judges on the questions of law presented to them by a provision whereby this court may be enabled to review the conclusions of said trial courts on the questions of fact upon which such rulings are based. It is equally evident that it could not have been the intention of the lawmakers to authorize the clerk to "find the facts" (which means to determine and declare the facts that have been established by the evidence—a judicial function which could not be discharged by the clerk), since the statute merely requires the judge to order the clerk to "take down the facts upon which the bill has been retained," which facts, as we interpret the law, consist of the testimony offered, the objection thereto, and the ruling upon the objection. But it may, and is most likely to, happen that much of the testimony as to an overt act by the deceased is elicited from the state witnesses, who are called to the stand at the beginning of the trial and before any occasion or opportunity is presented to the defendant, charged with the killing, to offer any testimony or reserve a bill of exception to its exclusion; and as the law provides for the taking down of the

facts only when such opportunity is presented and utilized, and as this court has settled it that the defendant cannot require it be done before, it follows that unless he can have the witnesses who have given their testimony recalled and required to repeat it, so that the clerk can take it down, he is deprived of the right which it is the purpose of the law to secure him. The only argument that is (or, so far as we can see, can be) advanced against according to a defendant in such case the right to have the witnesses recalled is that of inconvenience.

We are inclined to think, however, that the inconvenience may readily be reduced to a negligible factor; for, though the court is not obliged to order that the testimony likely to be required in a case such as this shall be taken down when first given, it may do so if it thinks advisable, or the defendant may be required to give notice, when such testimony is given, that he desires that the witnesses by whom it is given shall be held in court; and, again, it is not every killing that is actually seen by twenty three witnesses; so that, upon the whole, the apprehension of delay and expense, etc., appears to us to be rather exaggerated. On the other hand, if, as we think is the case, the law gives to a defendant on trial for the alleged unlawful killing of another the right to present to this court on appeal the evidence adduced on a question of fact underlying a vital adverse ruling upon a question of law, the important matter for this court to see to is that he is not deprived of that right, and it is immaterial how many witnesses it may be necessary to recall in order that he may enjoy it. We may say, in conclusion, that, in view of a somewhat uncertain jurisprudence on the question here considered, the ruling made by the trial judge might reasonably have been expected.

4. The defendant himself, having taken the stand, offered to testify "that deceased a short while before the homicide had charged him with making some remarks about the deceased whipping a certain woman, telling him that, if ever he made any more remarks about that, he was going to kill him," to which testimony the objection was made which we have considered in connection with the bill last above referred to, and the objection was sustained for the reasons given in the same connection. Defendant, as in the preceding instance, asked that the testimony be taken down, and the request was refused. For the reasons assigned, we are of opinion that it should have been granted.

[7] 5. A. J. Winston, a witness for defendant, was recalled by the state after defendant had closed, that the following questions might be asked him, in order to lay a foundation for his impeachment, to wit:

"Did you not state to Mack Roscoe in the courthouse about three weeks ago, when you were summoned down before the grand jury, that you saw the defendant when he walked into the place where the killing occurred, and, when he went in, you noticed that his eyes were flashing and thought he was going to do something? Did you not state that, the defendant said, 'Any one who would hit a woman was a ———;' and that you said, 'Hush, don't start any trouble or fight,' and then defendant said, 'I am talking about that ——— standing there by the door?' Did you not say that defendant shot 'him before you could get hold of him, and that, when he shot the second time, he shot into the floor, and that deceased was up against it, and he ought not to have done it?"

According to the recitals of the bill, counsel for defendant objected on the grounds (1) that defendant had closed his case, and that no such questions had been asked while the witness was on the stand; (2) that the witness had testified only "that he was in the room, playing poker with some parties, and he did not see the defendant when he came into the room, nor hear any altercations between them, and the first thing that attracted his attention was the firing of the shot, and he looked around, and the parties were clinched, and a crowd had gathered around

them," and hence that his testimony was not material; (3) that the testimony sought to be gotten before the jury, in the nature of impeachment, was for the purpose of trying to get in testimony which could not have been introduced in any other way.

The statement of the judge is that defendant objected "for the reason that, when Winston was on the stand as a witness * * * for defendant, the state had not then laid the foundation to impeach him, and that it was * * * too late to do so after the defendant had closed his case, and that defendant would, then, have no opportunity to call witnesses to * * * support the impeached witness Winston"; that the court ruled that the questions might be asked, and, if thereafter Roscoe was called as an impeaching witness, defendant would be allowed to call other witnesses to the support of Winston, and that Roscoe having been called by the state "and examined as a witness for the impeachment of Winston, substantially as set forth in this bill of exception," defendant did call and examine a witness for the purpose stated. The judge further states that he "regarded the impeachment of Winston and the impeaching questions propounded as pertinent and material to the case," and that the district attorney had stated that he had not learned that he could impeach Winston until after his cross-examination had been concluded. He does not negative the statement of the bill that the testimony given by Winston was substantially as therein recited; nor, save by possible inference, does he negative the statement that counsel for defendant rested his objection upon the second and third grounds stated in the bill, as well as upon the first, and, so far as we can discover from the record, the hearsay testimony of Roscoe, to the effect that Winston had made the statements to him, as indicated in the question propounded to Winston, was permitted to go to the jury as substantive testimony against defendant, with no warning that it was admitted merely for the purpose of impeaching the credibility of Winston.

It has been held by this court that:

"Although a defense witness has been cross-examined and dismissed without being questioned as to contradictory statements out of court, * * * yet the state, not having commenced rebutting, may be permitted to recall and examine the defense witness to lay the basis for contradicting him; * * * it appearing by the bill that the district attorney learned of the statement after the cross-examination of the witness, the recall operating no delay and causing no denial of any right of the accused." State v. Goodbier, 48 La. Ann. 770, 19 South. 755; State v. Brown, 111 La. 700, 35 South. 818.

It is true that it is not permissible to impeach a witness by showing that he has made contradictory statements as to "collateral, irrelevant, or immaterial matters," but "the test is whether, if the matter alleged to have been stated by the witness out of court were true, the party seeking to impeach the witness would be entitled to prove such matter in support of his case" (40 Cyc. p. 2699 et seq.), and there is no doubt that, applying that test in this case, the state would have been entitled to prove as against the defendant that he had made the statements attributed to him in the question propounded to Roscoe. In fact, because of its materiality, it ought not to have been allowed to go to the jury as the hearsay testimony of Roscoe without instructions from the judge that it was admitted merely to prove that Winston had made the statements, but not that they were true, and that they were not to be taken as substantive evidence against defendant. State v. Reed et al., 49 La. Ann. 709, 21 South. 732; State v. Felix Robinson et al., 52 La. Ann. 626, 27 South. 124.

[5] 6. Mack Roscoe, a witness for the state, was called for the purpose of proving the character of the deceased as a man of peace, and he testified that he had never heard it

discussed, but that he knew the deceased and the people in the oil field, among whom he lived and worked, and that from his contact with them and his personal observation he knew the character and reputation of the deceased.

The court held:

"That, under the circumstances the witness was qualified to testify concerning the character and reputation of deceased in Oil City and that neighborhood,"

—and admitted the testimony over the objection of the defendant. The objection was improperly overruled, since what was called for was the opinion of the community—not of the witness—and there is but one way in which a witness can become qualified to testify affirmatively on that subject, and that is by hearing members of the community express their opinions. If he has never heard such expressions, he may so testify, and the jury will draw its own conclusions.

7. A. W. Allison, a witness for the state, was placed on the stand for the same purpose as Roscoe, and gave similar testimony —i. e., to the effect that he had never heard the character of the deceased (whether he was peaceful and quiet or violent, quarrelsome and dangerous) discussed or talked about, but that from his contact with the deceased and with the people of the community he knew it to be that of an orderly and peaceful man—which testimony was admitted over the objection of defendant that he was not qualified to give it. The objection should have been sustained. The concluding paragraphs in the statement per curiam in this and the preceding bill read:

"The reputation and character of the deceased was not a legitimate subject of inquiry in the case, for the reason that no overt act of deceased towards defendant at the time of the homicide was proved."

And, as the testimony offered on behalf of defendant to prove the dangerous character of the deceased had been excluded, that of Roscoe and Allison would no doubt have met with the same fate if the objection had been placed on the ground thus stated by the judge.

[6] Defendant moved for a new trial, upon grounds included in his bills of exception, and upon the further ground that one Dock Baggett, a witness whom he had expected from a neighboring parish, had failed to appear; but he made no application for continuance, and was not entitled to the new trial on the ground last mentioned.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the verdict and sentence appealed from be annulled and set aside, and that the case be remanded to the district court, to be there proceeded with according to law.