[Crim. No. 1505.   Third Appellate District.—August 22, 1936.]

THE PEOPLE, Respondent, v. GASPERO CASSERIO, Appellant.

J. N. DeMeo for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendant, under an indictment charging assault with a deadly weapon with intent to murder, was convicted by a jury of assault with a deadly weapon. Motions for a new trial and in arrest of judgment were denied, and the defendant sent to the county jail.

From the judgment of conviction and from the orders denying the two motions, this appeal is taken. Several points are urged for reversal, the first being that the court erred in denying defendant's motion to withdraw his plea and to file a demurrer to the complaint.

The indictment was filed March 19, 1936. When arraigned on March 27th, the defendant with his counsel appeared, waived the reading of the indictment and requested time to plead, which was granted. The cause was then continued to April 3d. On that date defendant, through counsel, asked for further time, and the matter of entering the plea was continued to April 10th. At that time the matter was again continued; this time to April 17th, at which time he entered a plea of not guilty, and the cause was set for trial for April 28th. On April 23d a motion was made to withdraw the plea and to interpose a demurrer to the indictment. The record before us does not show any of the testimony then interposed in support of the motion, but it does appear the same was denied April 24th.

The granting of such a motion is within the discretion of the trial court (*People* v. *Staples,* 149 Cal. 405), and in the absence of abuse of such discretion, the action of the trial court will not be disturbed. However, we have examined the indictment and demurrer to be interposed thereto, and find the demurrer was without merit and the indictment entirely sufficient. Under such conditions, the refusal to permit defendant to withdraw his plea in order to present a demurrer, is not an abuse of discretion. (*People*

v. *Collins,* 60 Cal. App. 263 [212 Pac. 701]; *People* v. *Murray,* 87 Cal. App. 145 [261 Pac. 740].)

The portion of the indictment material here, reads as follows:

"GASPERO CASSERIO is accused by the Grand Jury of the County of Sonoma, State of California, by this Indictment, found this 18th day of March, one thousand nine hundred and thirty-six of the crime of ASSAULT (WITH A DEADLY WEAPON) WITH INTENT TO COMMIT MURDER committed as follows: The said GASPERO CASSERIO on or about the 16th. day of March, nineteen hundred and thirty-six, at and in said County of Sonoma, State of California, did wilfully, unlawfully and feloniously and with malice aforethought, make an assault with a deadly weapon upon one Antonio Viara, a human being, with the intent then and there, wilfully, unlawfully and feloniously and with malice aforethought, to kill and murder the said Antonio Viara, . . . "

The ground of demurrer particularly urged by defendant is that more than one offense is charged in the above indictment, claiming that the indictment charged assault with intent to commit murder, a crime defined by section 217 of the Penal Code, and assault with deadly weapon, a crime denounced by section 245 of the Penal Code.

Section 1159 of that code provides that a jury may find a defendant guilty of any offense which is necessarily included in that with which he is charged, or an attempt to commit the same, and it has frequently been held that the offense of assault with a deadly weapon is necessarily included in that with assault with intent to commit murder with a deadly weapon. (*People* v. *Gordon,* 99 Cal. 227 [33 Pac. 901]; *People* v. *Griffith,* 146 Cal. 339 [80 Pac. 68]; *People* v. *Watson,* 125 Cal. 342 [57 Pac. 1071].)

In *People* v. *Owens,* 3 Cal. App. 750 [86 Pac. 980], under an indictment similar to that in the instant case, the defendant was convicted of assault with intent to commit murder. The court there had the following to say with respect to the language of the indictment:

"By placing the words 'with a deadly weapon' in the indictment the people were limited to proving that particular kind of an assault, and the defendant was informed of the

particular character of the assault which he was to meet. The words may have been surplusage but they did not vitiate the indictment or the verdict.''

There might be circumstances where an information in the language here used could result in confusion and necessitate a reversal, but here the defendant admitted the injuries complained of were inflicted with a deadly weapon and therefore he was not misled to his damage, or his defense curtailed in any particular.

Appellant also claims the court erred in unduly restricting the examination of the prospective jurors on their *voir dire*. The court asked the panel collectively, if any of them knew of any reason why they could not act fairly and impartially without bias or prejudice in the case. The court then stated that the prosecution must prove the offense charged beyond a reasonable doubt and to a moral certainty, and asked the jury whether or not they were in sympathy with such a rule. The court also said: ''You all understand I assume, a defendant in every criminal case is presumed to be innocent until his guilt is established beyond a reasonable doubt and to a moral certainty. If there is anyone who does not understand that, please raise your hand.'' And elsewhere throughout the examination similar statements were made.

We do not believe the refusal of the court to permit counsel to examine the jurors further on these matters, unreasonably restricted defendant under the circumstances nor prevented the defendant from ascertaining the state of mind of the jurors. It has, by a comparative recent statute, been made the duty of the court to conduct such examination of the prospective jurors, and thereby to limit the long and repetitious examinations formerly carried on by counsel in the selection of a jury.

It is next alleged by appellant that the evidence was insufficient to justify the verdict. The record is too long for us to attempt to give more than a brief summary of what was developed by the various witnesses. The theory of the defense was that defendant and one Viara were raising chickens on a certain ranch; that defendant had knowledge of the dangerous reputation of Viara; that Viara and the witness had had trouble and threats had been made against defendant. Upon the return of defendant late one

night, he saw some unusual activity near where the chickens were and procured a pistol, went to that point, where he found his partner Viara and a truck belonging to a chicken dealer. Viara became angry and threatened physical violence, whereupon defendant at first retreated, but the assault by Viara continuing, the defendant then reached for his gun, and in fright, induced by the words and actions of Viara coupled with the knowledge of his past reputation, fired two shots which inflicted a superficial wound upon Viara. Viara, the complaining witness, testified that while he was conversing with the defendant, with his back turned to him, he turned, facing the defendant, and was shot without provocation. A Mr. Dunbar testified that the defendant came to where he and Viara were loading the chickens, and Viara said, ''Go in the house Tony, beat it, I will attend to you afterward''; whereupon defendant drew his gun and fired two shots. John Sanguinetti, an eye-witness to the affray, testified that Viara and the defendant had some conversation about defendant being paid for work in caring for the chickens. Viara said, ''Get the hell out of here, go in the house.'' Then the defendant pulled his gun from his pocket, pointed it at Viara, pulled the trigger and it snapped. Defendant then fired two shots at Viara.

The foregoing is sufficient evidence to support the verdict of assault with a deadly weapon. It is the contention of defendant that the act was done in self-defense, but where the evidence is conflicting, the verdict of the jury is final and conclusive.

It is next claimed the court erred in sending the jury back to the juryroom for further deliberation after they had been out some six hours and had announced that they were deadlocked ten to two. When the court inquired of the foreman of the jury if he considered it impossible to arrive at a verdict by further deliberation, the foreman of the jury said that one of the jurors had so stated. At the request of the jury the court reread the requested instruction and they returned for further deliberation. About thirty minutes thereafter they returned the verdict. The length of time the jury should be kept deliberating is a discretionary matter with the trial judge. (*People* v. *Selby,* 76 Cal. App. 715 [245 Pac. 792].) In this case the jury did not announce that the jury were unable to agree. They

were still working on the case and asked that a certain instruction be reread, and for the transcript of the testimony. It cannot be said that in view of the circumstances in this case that this was an unreasonable length of time for the jury to deliberate in the matter. There is no indication whatever of any coercion or abuse of discretion in this case.

█ It is also contended that the court erred in the giving of certain instructions. Appellant does not point out in what respect the instructions complained of are inadequate or confusing, and we have read the same and do not find them objectionable in the particulars claimed by appellant.

Also the criticism is made that certain instructions offered by defendant had been refused, but in each instance we find that the points complained of were covered in instructions already given. █ Appellant also claims that his cross-examination of the attending physician who treated the complaining witness for the bullet wounds, was unduly restricted. Appellant attempted to show that no nurse was required, and that Viara was able to come to the doctor's office unassisted and was able to drive his automobile. While the seriousness of the injury is a pertinent fact to be considered (*People* v. *Kerr*, 15 Cal. App. 273 [114 Pac. 584]) the best evidence of such seriousness is the description of the wound itself, which evidence was admitted. The line of examination attempted to be pursued by appellant was not particularly objectionable but the sustaining of the objection was not prejudicial to the defendant.

█ It was also submitted that it was error to refuse to permit the defendant to show knowledge of the dangerous character of the complaining witness by certain specific acts known to the defendant, the court limiting the inquiry to that of general reputation. It is permissible for a witness to show that the complaining witness was a dangerous character if he knew such to be the fact or if he knew of such reputation at the time of the alleged assault. Such showing is permissible in order that the jury may take into consideration the state of mind of the defendant at the time of the shooting and determine whether or not a reasonable person under such circumstances would form the belief that he was in imminent danger sufficient to justify him in shooting the complaining witness.

The record indicates that the trial court limited the defendant to proving such facts concerning the complaining witness as the defendant knew prior to the assault. This rule is laid down in the case of *People* v. *Hoffman*, 195 Cal. 295 [232 Pac. 974], where the court said:

"Appellant assigns as error the refusal of the court to permit him to show that Cornelison bore a bad reputation for peace and quiet at Pomona, Los Angeles County, and also in Orange County. It was not claimed that defendant had ever lived in either of those communities, or that he had any actual knowledge of Cornelison's reputation in either of those places. It is argued that because the night was dark defendant had reason to apprehend that Cornelison might be the one who was confronting him as he fired the fatal shot. But even if Cornelison had been the person who faced defendant when, as he claims, he fired in self-defense, evidence of the former's bad reputation for peace and quiet could not have been received unless it also were shown that defendant had knowledge of it. If defendant had learned of Cornelison's bad reputation in Pomona and in Orange County, then and only then would he have had greater reason to apprehend danger than if that reputation had been different. Where the only question to be determined is the existence and reasonableness of the belief under which the defendant claims to have acted in self-defense, evidence of the bad reputation of the deceased, or of one whom the defendant supposed to be his assailant, is wholly immaterial and inadmissible unless the defendant first shows that he had knowledge of such reputation. (*State* v. *Kennade*, 121 Mo. 405 [26 S. W. 347]; *State* v. *Rollins*, 113 N. C. 722 [18. S. E. 394]; *Commonwealth* v. *Straesser*, 153 Pa. St. 451 [26 Atl. 17]; *State* v. *Blassengame*, 132 La. 250 [61 So. 219].) Since there was no evidence that Cornelison's reputation had followed him to Imperial County, there is no presumption that defendant knew of it. (*State* v. *Blassengame, supra*.)"

Certain other minor points are urged for reversal, but we believe what we have said is sufficient to indicate that the judgment and orders appealed from should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.