THE PEOPLE v. JOEL NILES.

*Assault with intent to murder—Cross-examination of witness for prosecution—Expert evidence—Remoteness of investigation.*

A witness for the prosecution in a trial for an assault with intent to kill, being asked on cross-examination whether he did not steal overshoes from one Allen, answered that he never stole overshoes; and to the questions whether Allen did not follow him to his house and take these shoes, and whether he was followed and the overshoes taken from him, answered No. *Held*, that no reasonable complaint could be made of the refusal to allow a farther question as to whether any one followed him and took the overshoes; and that the court had already been liberal in permitting cross-examination as to this collateral matter.

In a prosecution for a murderous assault in which the assailant used a knife a witness testified that more than a year before, he had seen the defendant have a dark-handled knife, sharp on both edges. *Held* allowable, against objection, to permit the witness to be asked to describe it, though such testimony would be very remote. Exception could not be taken to excluding the question put to a witness for the defense, whether defendant was not a shoemaker, there being no showing of its relevancy in the trial court, though it was suggested above that such an occupation would account for the knife.

Exact rules cannot be prescribed to limit examinations in criminal prosecutions; circumstances must determine how far back the prosecution may carry them.

Exceptions by the defense in criminal cases cannot be sustained where the action of the court was not clearly erroneous and did not injure the respondent.

A person accused of an assault with intent to kill a man on horseback was said to have struck a downward blow with a knife, cutting the man's clothes, wounding the horse, and cutting the hair off square across the wound. A witness who had farmed for seven years, during which he had doctored horses and performed surgical operations

on them, and who claimed to have had experience in cutting live horse flesh and the hair on the horse, was asked whether the hair could be cut clean the full length of the wound. *Held*, that the question was properly ruled out as the witness had not shown that he ever tried to cut hair in the way suggested, and it was not shown and was not supposable that in a surgical operation it would be important so to cut it.

A trial judge has a right to introduce into his charge the remarks of the appellate court or other authority or author as to the value of expert evidence, and to read them to the jury.

A judge's charge in a criminal case is presumed to be warranted by the case made by the defense, if the bill of exceptions does not purport to give all the evidence and does not negative the submission of a theory which would support it.

The charge of the trial judge so far as given in the bill of exceptions must be assumed to be correctly reported, but if only part of it is given, it must be closely scrutinized to determine whether injury is done by the instructions when considered together.

In a prosecution for an assault with intent to murder, the complaining witness testified that the respondent had struck at him as he was sitting on horseback, and had cut his clothes and the horse; the defense suggested that the complaining witness might have inflicted the wound himself, and the judge charged that if it was not done at the time sworn to by the prosecution, it remained for the other side to show when and where it was done. He also charged that the case for the prosecution must be made out, not by a mere preponderance of evidence, but beyond a reasonable doubt. *Held*, that the former suggestion, though loosely made, might be regarded as meaning only that the defense could advance by suggestion or argument any theory as to when and where the injury was committed, if not as alleged by the prosecution, but not as requiring them to show when and where it was done, as that would be irrelevant if the prosecution did not establish defendant's guilt at the time and place and in the manner alleged.

Exceptions from Berrien. Submitted Oct. 20. Decided Nov. 10.

INFORMATION for assault with intent to kill and murder. Respondent was convicted. Exceptions overruled.

Attorney-General *Otto Kirchner* for the people.

*Jacob J. Van Riper* for respondent.

Cooley, J.   The defendant was prosecuted and convicted on a charge of assault with intent to kill and murder one John Wyant.   The evidence tended to show that the assault was made with a knife while Wyant was riding upon a horse in the public highway, and that a downward stroke of the knife cut the clothes of Wyant and inflicted a wound to the horse below the backbone, over the swell of the ribs, cutting the hair off square across over the wound.   The case comes before us on exceptions.

Several of the exceptions are to the rulings of the court in the reception and rejection of evidence in respect to matters where we think the court had a plain discretion.   One of these relates to the testimony of John Bennett, who gave important evidence for the prosecution.   On cross-examination he was asked whether he did not steal overshoes from one Allen, and replied that he never stole overshoes.   He was then asked whether Allen did not follow him to his house and take these shoes, and replied " No."   Also, whether he was followed and the overshoes taken from him, and again replied " No."   A further question whether any one followed him and took the overshoes was not allowed to be put. No reasonable complaint can be made of this.   The court had already been liberal in permitting cross-examination respecting this collateral matter.

Another witness testified to seeing the defendant have a dark-handled knife, sharp on both edges, more than a year before the alleged offense.   The witness was asked to describe it, and this was objected to for remoteness, but allowed.   It was certainly very remote, but the question how far back the prosecution shall be allowed to carry such inquiries must always be one of some difficulty, and must be determined by the circumstances.   Exact rules to guide the trial court are impossible.   Besides, the description of the knife had already been given in part, and the witness only said afterwards, it was not a knife that shut up.

For the defense a witness was asked whether the defendant was not a shoemaker by occupation, and the court sustained the objection to the question.   It is suggested now that his

occupation would account for his possession of the knife; but the suggestion was not made in the circuit court, nor does any other reason appear to have been given for the proposed evidence. Without explanation the evidence seemed to be irrelevant. In none of the above cases was the action of the court clearly erroneous, and by none have we reason to believe the defendant was injured. These exceptions cannot therefore be sustained. *Strang v. People* 24 Mich. 1.

To show that a downward stroke of a knife would not cut the hair of a horse square off, as that of the horse in question was said to have been cut, the defense called one Spearing as an expert, who testified that he had been farming about seven years, during which time he had been in the habit of doctoring horses, and performing surgical operations upon them; that he had been employed some for that purpose; had had experience in cutting horse-flesh when alive, and in cutting the hair upon a horse, he could not tell how many times. He was then asked whether, in his opinion, in cutting an animal in the way this horse was cut, the hair could be cut clean the full length of the wound. The question was objected to and ruled out.

The ruling may be justified on the ground that the witness had not shown that he ever cut or attempted to cut hair in the way suggested, and was therefore not an expert at all. A horse's hair, it may be presumed, is seldom cut in that way, and from the ordinary methods of cutting, it is presumable the jury could judge as well as the witness whether the alleged downward stroke would or would not cut the hair square off. It did not appear, and is not supposable, that in a surgical operation it would be important to cut or attempt to cut the hair in that way.

Three exceptions were taken to portions of the charge to the jury. One of these was to the judge reading to the jury remarks of this court concerning the testimony of experts, contained in the report of the case of *People v. Morrigan* 29 Mich. 8. The objection seems to have been that the judge read a certain paragraph calculated to depreciate the value of

44 Mich.—39

expert evidence, without giving the context, or a statement of the facts which called out the remarks read. But the judge had an undoubted right to make the same remarks himself as a part of his charge, and it was immaterial whether they were original with him, or were taken at second hand from some other judge or other authority or author.

The most serious difficulty in the case arises upon certain portions of the charge which relate to a claim, or rather a suggestion on the part of the defense, that the complaining witness must himself have inflicted upon the horse the injury which he swore had been done by the defendant. The charge is not given in full, but the following paragraphs appear:

"You recollect the testimony of John Wyant the complaining witness, who swears that he met this man there on the highway, in the middle traveled track; that the other man got off his wagon and stood by the road, and when he came along swore he would kill him, and struck at him with his knife. You recollect how he testified what the effect of that blow was. The defendant alleges that this is a mere fabrication; that it is a put-up job, and that no assault occurred there at all. They say that this testimony is manufactured by the complaining witness, John Wyant. Now you will recollect the circumstances in this case. Wyant, you remember, went to Pokagon before the defendant started, and met the defendant as he was coming back. You are to consider what the probabilities would be of his originating that design, or whether he went prepared for any such design or not.

"It is claimed by defendant that such a wound as this could not have been made with a knife at that time. Now to determine that question you are to look at the probabilities of the case. If it was not done there, the prosecution claim and bring testimony which they claim shows that it was done then and there, but if it was not done then it remains for the other side to show when and where it was done.

"What are the probabilities as to a plan of that kind being concocted upon the meeting of these persons, without any evidence showing that such a design had been formed beforehand? If there is no such design shown by this man Wyant, is entirely for you to say. If there is none, then it is for you to say what the probabilities are of his originating such a thing upon the meeting of these men, and going after

he got home to have him arrested. This is a matter proper for you to consider in determining whether there was an assault or not.

" You will recollect the testimony of Mr. Reed ; you recollect that Reed testified that when he came to Berrien with the horse he was upon the horse ; you remember what he said about the wounds, and as to the cut in the overalls, whether they agreed or not, and all about these circumstances. You will remember his testimony. It is not worth while for me to repeat it : it is proper for you to consider whether or not a person sitting upon a horse and making a wound in that way could have made a wound in the shape that this is : whether the tendency of a wound by a person sitting upon a horse, attempting to manufacture this testimony, whether it would be downwards or this way, or whether it would be upwards ; that is a matter for you to consider, whether a man sitting upon a horse attempting to make such a wound could have made such a wound as this is."

This last paragraph is objected to, as tending to lead the jury to suppose the theory of the defense was that the complaining witness cut the horse himself while sitting upon his back, when in point of fact they had not attempted to support such a theory by evidence. But the bill of exceptions does not contain all the evidence, or negative the fact that the defense may have advanced such a theory. The presumption is the judge's remarks were warranted by the case the defense attempted to make.

A more serious question arises upon the paragraph in which the judge seems to throw upon the defendant the burden of showing when the wound was inflicted if not at the time when the parties met upon the highway. If this paragraph gives the exact words of the circuit judge, he certainly expressed his views very loosely ; not to say incorrectly.

It is manifest, however, from the bill of exceptions, that the whole charge is not given, but that we have only the questions raised upon detached sentences. The paragraph in question also reads as if something may have been omitted, or the judge's remarks inaccurately reported ; and although we must assume the contrary, the awkwardness of expression

here may well invite additional care in scrutinizing the remainder of the charge in order to determine whether injustice has probably been done to the defendant.

If in fact the horse was not cut at the time the parties met in the highway, it was plainly immaterial when he was cut; for the case of the prosecution depended upon their making out that the injury was committed then and there. If, therefore, the judge had told the jury " the prosecution claim that the injury was done then and there, but if it was not done then and there, it is immaterial to this case when it was done," he would have been entirely correct. When instead of this he told them " it remains for the other side to show when it was done," did he mean or is it likely he was understood to mean, that when the prosecution failed to establish their case, it was still necessary for the defence to account for a wound which the prosecution had failed to show he had inflicted.

We have examined this record with care and my brethren are all of opinion that when the whole charge is considered there is no reason for believing the jury to have been misled. The defendant, if guilty at all, was guilty of making the assault at the time and place and in the manner testified by John Wyant. The judge correctly instructed the jury that the case for the prosecution must be made out, not by a mere preponderance of evidence, but beyond a reasonable doubt. They must then have been satisfied beyond a reasonable doubt that the cutting was done by the defendant, as testified to by the complaining witness. It does not appear that there was any evidence that the cutting was done at any other time or place, but the defence suggested that it may have been so done, in order to fix a false charge upon the defendant. The judge's remark made after all the evidence was in, that if the cutting was not done as charged, it remained for the defense to show when and where it was done, could only have referred to his suggestion, and must have been designed to direct the attention of the jury to the theory whereby the defense threw the blame upon Wyant himself. The jury could not have understood the judge as meaning that if the

offense was not committed, the defence must nevertheless show when and where the cutting was done, for this would have been in direct and positive contradiction to the previous instruction, and to the whole tenor of the charge. He probably meant, as we all think, no more than this: that it was open to the defence to advance by suggestion or argument any theory as to when and where the injury was committed if not as the prosecution alleged.

On the whole record the court is satisfied no wrong has been done to the defendant by the rulings or instructions of the circuit judge, and he must be advised to proceed to judgment.

The other Justices concurred.