[Crim. No. 2404.  In Bank.—May 26, 1922.]

## THE PEOPLE, Respondent, v. SAMUEL SMITH, Appellant.

[1] CRIMINAL LAW—CONTRIBUTION TO JUVENILE DELINQUENCY—PLAYING OF CARDS FOR MONEY—EVIDENCE—IMPEACHMENT OF DEFENDANT ON COLLATERAL MATTER—EFFECT OF.—In a prosecution under an information charging the defendant with a violation of section 21 of the juvenile court law in encouraging a minor to play cards for money in a gambling club, it was error to permit the state to impeach the testimony of the defendant on his cross-examination that he had not been previously employed by the same club as a card dealer and that he had not dealt "black-jack" for it while it was at a different location, where it was not made to appear that the testimony as to past occupations was relevant to the main issue, or was such a matter as the prosecution might have proved as an independent fact as a part of its case in chief, but such error was not sufficiently prejudicial to justify a reversal of the judgment, where the defendant, although denying he dealt "black-jack" to the minor, admitted that he had followed gambling for a livelihood and had dealt "black-jack" in other states.

[2] ID.—ALIBI—EVIDENCE—HARMLESS INSTRUCTION.—In such prosecution, the defendant was not prejudiced by the giving of an instruction cautioning the jury against a fabricated defense of alibi, where there was no evidence on the subject of alibi except the denial of the defendant in answer to a question as to his dealing "black-jack" at the club at the time in question, that he had ever dealt "black-jack" in the house.

[3] ID.—NAME OF MINOR—DISCREPANCY BETWEEN ORDER OF COMMITMENT AND INFORMATION—AMENDMENT—EFFECT OF.—A discrepancy between the order of commitment and the information as to the name of the minor to whose delinquency the defendant is charged with contributing is not sufficient to justify a reversal of the judgment of conviction, where the order was amended by the com-

mitting magistrate after motion made to set aside the information on such ground.

[4] ID.—IMPEACHMENT OF MINOR—EXCLUSION OF EVIDENCE—LACK OF PREJUDICE.—The exclusion of evidence, offered by the defendant, that the minor at the preliminary examination of another for the same offense had identified such other person as a participant in the game whereas in fact such person was not in the city at the time, was not prejudicial where the minor at the trial of the defendant was asked if he had ever seen such other person at the club, and replied that he did not suppose so, because he had been acquitted of ever being there.

[5] ID.—SHADOWING OF MINOR—DETECTIVES EMPLOYED BY DEFENDANT —CONCLUSION OF WITNESS—EFFECT OF.—Error in permitting the minor to state his conclusion, instead of the facts upon which he based it, that detectives who had been shadowing him were employed by defendant, was waived where the court in admitting the testimony stated that the defendant could examine the witness as to the basis of his knowledge, and the defendant did not choose to act upon the suggestion.

[6] ID.—REPUTATION OF CLUB.—The admission of evidence that the club in question had the reputation of being a gambling-house was not prejudicial where the minor testified that he was first directed to the place by a taxi driver in answer to an inquiry as to where he could find a game, and was admitted without being known or without a membership card.

[7] ID. — RAIDING OF CLUB BY POLICE. — Evidence that the club had been raided by the police as a gambling institution while it was located at a different place and appellant was present was competent to show defendant's knowledge of the character of the club.

[8] ID. — SUFFICIENCY OF EVIDENCE. — Evidence that when the minor played "black-jack" he bought chips from defendant to bet on cards, that he talked to defendant during the game, and that defendant dealt for him occasionally, was sufficient to sustain a conviction, notwithstanding evidence that defendant never requested the minor to play or gamble.

[9] JUVENILE COURT LAW—CONSTITUTIONALITY OF.—Section 21 of the juvenile court law as qualified and supplemented by subdivision 11 of section 1 of the same law is constitutional.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Harold Louderback, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank J. Murphy for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

LAWLOR, J.—The defendant, Samuel Smith, appeals from a judgment of conviction of a misdemeanor triable in the superior court in having violated section 21 of the juvenile court law (Stats. 1915, p. 1225), to the effect that anyone who shall commit any act which causes or tends to cause any minor under the age of twenty-one years, among other things, to become such a person as is described in subdivision 11 of section 1 of said act, or any person who by any act, threat, command, or persuasion induces or endeavors to induce any such minor to perform any act, to follow any course of conduct, or to so live as would cause or tend to cause him to become or remain a person coming within the provisions, among others, of said subdivision 11, shall be guilty of such a misdemeanor.

Appellant was charged by information with the violation of this statute in that he induced, persuaded, and encouraged James E. Edmonds, then of the age of sixteen years, to frequent a public gambling-house, to wit, the 33rd Assembly District Club, at 32 Turk Street, in the city and county of San Francisco, and there engage in the playing of cards and other games of chance for money. It was alleged these acts of appellant tended to and did encourage Edmonds to become such a person as is described in subdivision 11 of section 1 of the juvenile court law, to wit: A person under the age of twenty-one years who is leading, or is in danger of leading, an idle, dissolute, and immoral life.

It appears that Edmonds, whose home was in New Orleans, left that city and came to San Francisco, unaccompanied by and without the consent of his parents. His first visit to the 33rd Assembly District Club was on the night of October 28, 1920, he having been directed there by a taxicab driver. He was admitted to the club after he told the doorkeeper he was twenty-two years old. Edmonds testified that on the occasion of his first visit appellant, who was a member of the club, was present, but that no conversation passed between them. The two succeeding nights

Edmonds again visited the club, and, according to his testimony, appellant was dealing black-jack there on both those nights, in which games Edmonds played, and during which he talked to appellant. Edmonds also returned to the club on the nights of October 30th and November 1st, but did not remember seeing appellant on those visits. He testified that he played cards on each of the five nights and that he lost in all something over seven hundred dollars. Appellant denied he was employed by the 33rd Assembly District Club at the times Edmonds visited it and that he ever dealt black-jack at 32 Turk Street.

[1] 1. We shall first consider appellant's contention that the court erred in allowing him, after he had testified in his own behalf, to be impeached by another witness concerning asserted collateral matter brought out on cross-examination. We quote from appellant's testimony on his direct examination: "Q. Have you ever been employed in a place where they played cards for money? A. I have. Q. Where? A. In Nevada—different states. Q. Have you ever been employed in San Francisco? A. In clubrooms here, yes, sir. Q. Where? A. 225 Ellis Street [the former location of the 33rd Assembly District Club]." On cross-examination he testified: "Q. Isn't it a fact that you dealt black-jack in the 33rd Assembly District Club when it was located at 325 Ellis Street? A. 225 Ellis? Q. When it was on Ellis Street? A. No, sir. . . . Q. And you now say under oath, Mr. Smith, that while you were working for the 33rd Assembly District Club when it was located on Ellis Street that you did not deal black-jack? A. No, sir. . . . Q. How long previous to July of 1920 [when it moved to 32 Turk Street] had it been that you were employed by this 33rd Assembly District Club? A. Possibly two years." None of this testimony was objected to. The following testimony was given in rebuttal by John C. Miles, a police officer: "Where did you first see him [appellant]? A. 225 Ellis Street. Q. When? A. Oh, various times, and often between 1917 and 1918. . . . Q. Do you know what his occupation was there? A. Why, that of a card dealer. . . . Q. What kind of a game was he dealing? Mr. Murphy: I will object to that upon the ground it is calling for impeaching testimony upon a collateral matter. The Court: I will allow the question. A.

I have seen him dealing California stud-poker and black-jack, that is all." The court had previously stated in regard to the admission of the impeaching testimony: "I am willing to have this go in, provided, first, that it is on the matter of occupation, and that the witness knows that it is on the matter of occupation."

In *People* v. *Chin Mook Sow,* 51 Cal. 597, 600, it was said: "It is a well-settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. And if a question is put to a witness on cross-examination which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked him the question; but it is conclusive against him. But when the question asked on cross-examination calls for a response in respect to a matter which the party asking the question would have a right to prove as an independent fact, the rule does not apply." (See, also, *People* v. *Dye,* 75 Cal. 108 [16 Pac. 537].)

It was held in *People* v. *Niles,* 44 Mich. 606 [7 N. W. 192], that, unexplained, testimony concerning the occupations of a defendant in a criminal case was irrelevant. In *State* v. *Blassengame,* 132 La. 250 [61 South. 219], the court held that the circumstances of a case might make such evidence relevant. It is true that counsel for appellant, in the case at bar, brought up the subject of appellant's occupations, evidently to present him in the most favorable light before the jury. In his opening statement he had said he would show appellant had been engaged in many occupations—"all ordinarily referred to as legitimate hard work and that he has also engaged in playing cards, following an injury after which he has spent much of his time as a card player," and that "he was not employed at any time in the 33rd Assembly District Club." Since appellant brought up the subject of his occupations and testified on direct examination that he had been employed at 225 Ellis Street, it was proper on cross-examination to question him as to the nature of such employment. In fact, this was not objected to. But it does not follow that such evidence was relevant and not collateral. It has not been made to appear that the testimony as to his past

occupations was relevant to the main issue, or was such a matter as the prosecution might have proved as an independent fact as a part of its case in chief. In our opinion, evidence that appellant, two years before the commission of the crime in question, was employed as a black-jack dealer, even by the same employer, was but proof of a prior wrongful act, unconnected with the crime charged. Such evidence would ordinarily not be relevant (1 Jones on Evidence, sec. 143), nor a proper subject of impeachment (*Steen* v. *Santa Clara Valley etc. Co.*, 134 Cal. 355 [66 Pac. 321]), and it has not been shown to be relevant to any issue in this case. The ruling was, therefore, erroneous.

It remains for us to consider whether an affirmance of the judgment, in view of this error, would result in a miscarriage of justice. An examination of the record satisfies us that the verdict was not affected by this ruling. It is plain from the evidence that the jury believed Edmonds told the truth when he testified as to appellant's connection with two of the games in which he participated, and also that such conduct on the part of appellant constituted a violation of the statute. Appellant admitted that he had followed gambling for a livelihood, that he had dealt black-jack, denying, however, that he had done so in this state. It must be assumed from the evidence as a whole and the adverse verdict that the jury did not accept this qualification, but believed from all the circumstances that he dealt black-jack for the 33rd Assembly District Club, and that he did so on the occasions testified to by Edmonds. Appellant's testimony was in direct conflict with that of Edmonds, and when it is considered that the latter's testimony was vigorously attacked from every angle, and that no effort was spared to impeach it, it cannot reasonably be concluded that the item of impeaching testimony prejudicially affected the jury on the point whether appellant dealt black-jack at 32 Turk Street when Edmonds was present. (Pen. Code, secs. 960, 1258, 1404; Const., sec. 4½, art. VI.)

[2] 2. Appellant's next claim is that the court erred in giving the following instruction on the subject of alibi: "The defendant could not have been in two places at the same time; and in this contradiction of witnesses the jury have to determine for themselves where lies the truth. In

so judging they will take into consideration the appearance and apparent candor and fairness of the respective witnesses; the probability of their statements; its coincidence with other facts or features of the case which they may deem established; and, generally, those rules of ordinary experience and general observation by which intelligent men decide as to controverted propositions of fact. The effect of an alibi when established is like that of any other conclusive fact presented in a case, showing, as it does, that the party asserting it could not have been present at the time of the commission of the crime alleged in the indictment, and therefore did not participate in it, is when credited, a defense of the most conclusive and satisfactory character.

"The fact, however, which experience has shown, that an alibi as a defense is capable of being, and has been occasionally successfully fabricated; that even when wholly false its detection may be a matter of very great difficulty; and that the temptation to resort to this as a spurious defense may be very great, especially in cases of importance; these are considerations attendant upon this defense which call for some special suggestions upon the part of the court.

"These are, that while you are not to hesitate at giving this as a defense full weight,—that conclusive effect to which, when established, it is justly entitled, either as entirely satisfying you of the innocence of the defendant, or as creating a reasonable doubt which entitles the defendant to an acquittal,—still, you are to scrutinize the testimony offered in the support of an alibi with care that you may be satisfied that a fabricated defense is not being imposed upon you."

This instruction, although the same as that approved in *People* v. *Lee Gam,* 69 Cal. 552 [11 Pac. 183], was disapproved in *People* v. *Levine,* 85 Cal. 39 [22 Pac. 969, 24 Pac. 631], and *People* v. *Lattimore,* 86 Cal. 403 [24 Pac. 1091], and in *People* v. *Roberts,* 122 Cal. 377 [65 Pac. 137], a similar instruction was held to be reversible error, upon the grounds that they constitute a charge upon the weight of the evidence, and that they cast the burden of proof upon the defendant. However, we are of the opinion that the state of the evidence in the case at bar renders the error harmless. Appellant correctly states that "It

must be remembered that the appellant was the only witness who testified as to the alibi in this case." An examination of the transcript shows that, although he did state he had never seen Edmonds prior to his arrest, his only testimony approaching the subject of alibi was as follows: "Q. From the twentieth day of October to the second day of November, were you employed at the 33rd Assembly District Club? A. I was not. Q. Were you there on any of those days above mentioned inclusive, dealing black-jack? A. I never dealt black-jack in the house." The answer given is not responsive to the question and does not tend to show whether appellant was or was not present at the time and place of the alleged commission of the crime. The instruction was therefore not applicable and hence appellant was not prejudiced thereby. (*People* v. *Walsh,* 43 Cal. 447.)

[3] 3. Appellant assigns error to the refusal of the trial court to set aside the information on the ground that it did not charge the offense set out in the order of commitment. (Pen. Code, secs. 809, 872; *People* v. *Lee Look,* 137 Cal. 590 [70 Pac. 660]; *People* v. *Nogiri,* 142 Cal. 596 [76 Pac. 490]; *People* v. *Parker,* 91 Cal. 91 [27 Pac. 537].) The complaint was filed and the preliminary examination conducted in the juvenile department of the superior court and charged an offense of contributing to the delinquency of James E. Edmonds; the order of commitment gave the name of the minor as James E. Edwards, and the information as James E. Edmonds. At the arraignment, on December 12, 1920, appellant moved to set aside the information, and the hearing was continued until December 21st, the court directing the district attorney to procure an amendment of the order of commitment. On December 20th, the committing magistrate, by a minute order, amended the order of commitment to conform to the information as to the name of the minor, reciting that the discrepancy was due to a clerical error. The amended order was presented to and filed in the trial court, which, on December 21, 1920, denied appellant's motion to dismiss the information.

It is not necessary to determine whether this mode of correcting a purely clerical error is regular or not. The mistake was one of those defects or errors in pleading

which are declared by the sections of the constitution and
the Penal Code already referred to, to be insufficient to
justify a reversal or a new trial.

[4]  4. The next contention of appellant is that the court
erred in refusing to permit the defense to introduce evi-
dence tending to prove that Edmonds was mistaken in his
identification of one James Young, who gave the name
of James Thomas, at the preliminary examination of Young
for the same offense as that charged against appellant.
Young was one of the persons Edmonds stated to have been
present at the time he visited the 33rd Assembly District
Club.  Upon cross-examination Edmonds was asked the fol-
lowing question, to which an objection was sustained: ''Q.
Is it not a fact that upon the preliminary examination in
the case of *People* v. *Thomas* you identified Thomas as one
of the participants in the game in which you claim Smith
was dealing . . . ,—that you also identified him as the
man that you pointed out to Mr. Floyd on the night of
November 6, 1920, and is it a fact now that you were
mistaken as to your identification of Mr. Thomas, both as
to being a participant in the game and as having identified
him to Mr. Floyd on the night of November 6, 1920?''
James Young, testifying in behalf of appellant, was asked
on direct examination: ''Well, did James W. Edmonds
identify you as a person who was present at the 33rd
District Club between October 28 and November 1, 1920?''
An objection to this question was also sustained.  The dis-
trict attorney objected upon the grounds that it was incom-
petent, immaterial, irrelevant, and not proper cross-exam-
ination, and that the inquiry was going too far afield; that
if the testimony were allowed the prosecution would be en-
titled to bring in a number of witnesses to testify that Ed-
monds had identified all the persons involved in the several
charges.  Counsel for appellant offered to prove that ''this
witness [Edmonds], in a hearing before Judge Murasky, in
the case of *The People* v. *Thomas*, charged with con-
tributing to the delinquency of a minor, positively, and
without equivocation, identified the defendant in that case,
Thomas, as having participated in the very games in which
this defendant is charged with having played, and we
will then undertake to prove, and do now undertake to
prove, that this witness was absolutely wrong, and that

Thomas, the man whom he then positively identified was in San Diego at the time the alleged game took place.''

Assuming that the inquiry should have been allowed, it cannot be held the rulings were prejudicial. The following testimony of Edmonds shows that he did not insist upon this trial that Young was one of the persons he saw at the 33rd Assembly District Club: ''Q. Now, I will ask you if you know a man known as James Thomas? A. I do. Q. And where did you first meet him? A. I first saw him in the preliminary hearing at which he was tried. Q. Did you ever see him in the 33rd District Club? A. I don't suppose so; he was acquitted of ever being there.'' Moreover, Edmonds was subjected to a searching examination as to the correctness of his identification of appellant. The excluded testimony would therefore have been but additional evidence to the same point.

[5] 5. It is insisted the court erred in permitting Edmonds to testify on redirect examination, over the objection that the evidence was incompetent, irrelevant, and not binding on appellant, that he knew that while he was in New Orleans and while he was on his way to San Francisco to attend the trial he was being shadowed by detectives in the employ of appellant, on the ground that ''there was no evidence in the case to show that such alleged detectives were employed by the defendant, or that the defendant had any knowledge of such employment. Testimony of this character has always been held to be inadmissible,'' citing *People* v. *Dixon,* 94 Cal. 256 [29 Pac. 504]; *People* v. *Choy Ah Sing,* 84 Cal. 276 [24 Pac. 379]. It was developed on the cross-examination of Edmonds that after returning from New Orleans he went to see appellant's counsel, and also that he had telephoned to and called on appellant, and the latter claimed these communications were had for purposes of blackmail. The testimony in question was offered as tending to explain Edmonds' motive in having these communications, it being asserted by counsel for the people that ''he was induced to go and see them by this very defendant himself, for the purpose of inducing or bribing him to leave the jurisdiction of this court after he arrived.''

It may be conceded that if the witness had any knowledge he was being shadowed by appellant's agents he should

have been asked to state the facts upon which he based it, rather than stating his conclusion. But the court in admitting the testimony said: "It is open to recross-examination as to what the basis of his knowledge was, as to whether it was such knowledge as to justify his answer." As the defense did not choose to act upon the suggestion of the court, we cannot hold in the face of the judgment of conviction that the witness did not have primary knowledge of the fact. Inasmuch as the defense did not inquire into the matter the objection will be deemed to have been waived.

[6] 6. Appellant's next contention is that on the ground it was hearsay, the court erred in admitting evidence to the effect that at the times Edmonds visited the 33rd Assembly District Club the place had the reputation of being a gambling-house. Even conceding this ruling to have been erroneous, appellant could not have been prejudiced by it. That the 33rd Assembly District Club was a public gambling place might also have been inferred from Edmonds' testimony that he was first directed to the place by a taxicab driver when he asked if the latter could "show me where there was a little game," and that he was admitted to the club without being known, and without a membership card. In any event, no prejudice could have resulted from the admission of the testimony in question for the purpose of showing appellant's knowledge of the character of the premises, for according to his own testimony he had formerly been employed by and was a frequenter of the club.

[7] 7. It is next claimed the court erred in receiving evidence that the police raided the premises at 225 Ellis Street, the former location of the 33rd Assembly District Club. This testimony is asserted to be erroneous on the grounds that it was incompetent, irrelevant, immaterial, not proper cross-examination, called for the opinion and conclusion of the witness, impeached and disgraced appellant in the eyes of the jury, and that the jury might have concluded that inasmuch as appellant had once been an employee in a gambling club, it was probable he was engaged in a like employment at the time of the alleged commission of the crime for which he is now being prosecuted. Before the questions objected to were propounded, appellant had testified, without objection, that the 33rd

Assembly District Club was the same one that had been located at 225 Ellis Street, and that he had worked in the club at that location. It also appears from his testimony that the character of the club had not materially changed since the time it occupied 225 Ellis Street. Then he testified: "Q. Don't you know, as a matter of fact, in 1918, while you worked there, and while you were in the place, the police raided it as a gambling institution, and carted everybody off to the city prison? . . . Mr. U'Ren: I just want to go into this man's knowledge as to the reputation of the place; isn't that the fact? A. I was there twice, on two different occasions, when the place was raided." An objection to further evidence along the same line was sustained, the court announcing that the point was sufficiently covered by the testimony under review.

There was no error in the admission of this evidence. Although housed in a different location, the club was the same one in which Edmonds testified he had played cards for money. Appellant's knowledge of the character of the club was relevant, and testimony that he knew of its character while at one location tended to prove that he knew of it while at another.

[8] 8. It is insisted that the verdict is against law. The jury were instructed in effect that if they found that Edmonds frequently and without any inducement, persuasion, or encouragement upon appellant's part went to the premises described in the information, and engaged in gambling, they must find appellant not guilty, and also that if they found "no acts proven on the part of defendant which would induce" Edmonds to become or remain addicted to the habit of gambling, they must find appellant not guilty. It is argued that as Edmonds testified appellant never asked him to play or gamble, it was the duty of the jury under the above instructions to return a verdict of not guilty. However, from the record as a whole, and particularly from Edmonds' testimony that when he played black-jack he bought chips from appellant to bet on the cards, that he talked to appellant during the game, and that appellant dealt for him occasionally, we cannot say there was not evidence upon which the verdict might have been predicated under the instructions.

9. Error is also assigned to the refusal of the court to permit evidence for appellant that he invited Edmonds to his apartment for the purpose of entrapment. The evidence shows that Edmonds visited the apartment, but while he claimed it was to get his money back and for the purpose of following up a suggestion of a bribe which he asserted was to be offered to persuade him to leave the jurisdiction, appellant insisted it was for purposes of blackmail.

As tending to prove the latter contention, appellant offered to show that upon one occasion he had stationed a photographer outside the apartment house to get a picture of Edmonds entering and leaving it, and that a stenographer and a detective were stationed inside to report the conversation between Edmonds and appellant. However, upon that occasion Edmonds did not appear at all. It is contended by the attorney-general that such testimony would be irrelevant, immaterial, and self-serving. Conceding that the suggested preparations by appellant for Edmonds' visit might tend to prove his distrust of Edmonds, we do not see how they could tend to prove Edmonds' state of mind in going there. The ruling was proper.

[9] 10. The last contention is that "section 21 of the juvenile court law as qualified and supplemented by subdivision 11 of section 1 of the same law, is unconstitutional and void." In *People* v. *De Leon*, 35 Cal. App. 467 [170 Pac. 173], the constitutionality of the juvenile court law was upheld, and a petition for a hearing of the cause in this court was denied. An examination of the petition for a hearing in this court shows that the question of the constitutionality of the act was raised therein and the subject fully presented. Appellant's contention is, therefore, without merit.

The judgment is affirmed.

Shaw, C. J., Lennon, J., Wilbur, J., Sloane, J., and Shurtleff, J., concurred.