[Crim. No. 3736. Fourth Dist., Div. One. July 31, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
RUBY FRANCES BROWN, Defendant and Appellant.

### COUNSEL

Langford, Langford & Lane, Langford & Langford and J. Perry Langford for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

### OPINION

**AULT, J.**—In the first count of an information, filed by the District Attorney of San Diego County, Appellant Ruby Frances Brown was charged with a felony, the burglary of a Big Bear Market on January 15, 1968 (Pen. Code, § 459). The second count charged her with a misdemeanor, contributing to the delinquency of her two minor daughters, Frances Ruby Goldberg, age 16 years, and Patricia Ann Goldberg, age 15 years, on the same date (Pen. Code, § 272). After a superior court trial, a jury was unable to agree on the burglary charge, but found appellant guilty of contributing to the delinquency of her minor daughters. Appellant's motion for a new trial was denied, and her application for probation was eventually withdrawn. The trial court sentenced her to serve 90 days in the county jail and ordered her to pay a fine of $250. She appeals from the judgment of conviction.

## STATEMENT OF FACTS

On January 15, 1968, Michael G. Melton, the manager of the Big Bear Market in La Mesa, California, was observing the activities in his store from the back storeroom through a one-way mirror, using a pair of binoculars. He saw appellant and her two daughters remove various items from the shelves and appear to secret them on their persons or in their purses. On several occasions he watched one of them remove an item from the shelves; the three would then huddle together, and the item would disappear. On one occasion, he observed appellant remove a gallon can of Wesson oil from a shelf and appear to place it under her dress. When appellant and her two daughters left the store without going through a check stand, Melton followed them to the parking lot where he placed all three under citizen's arrest and escorted them back to the store. While still in the parking area, appellant said, "Please, can't we make an adjustment?"

When Melton attempted to get appellant and her daughters into the back of the store before discussing the incident, appellant became belligerent. Melton asked an employee to telephone the sheriff's office. Appellant then threw her purse to one of her daughters and told her to run, which she did, leaving the store by the front exit. Appellant removed the gallon can of Wesson oil and a box of 100 teabags from under her clothing and threw them on a counter; the other daughter took an item from her purse and threw it. Appellant forced her way to the front of the store where she was restrained from leaving by Melton and an unidentified customer until the sheriff arrived.

After Deputy Sheriff Heil arrived, he spoke briefly with Melton, and then advised appellant and the daughter who had remained in the store they were under arrest. He and another deputy went to the parking lot to find the other daughter. They found her locked in an automobile which contained several boxes of groceries and three empty purses. No receipts or trading stamps were found with the groceries, which were identified as coming from three other supermarkets, Food Basket, Mayfair and Alpha Beta. Heil advised all three women of their constitutional rights and each indicated she did not wish to talk with him. However, he continued to question appellant who stated, "She had stole [sic] the items, . . . please let her pay for them, and please let me and my daughters go." Heil testified to these admissions at the trial without objection.

In the defense, appellant testified she was shopping for groceries for her restaurant and for her eight children, did not steal any items from the Big Bear Market or from any other market; she denied engaging in any of the activities which had been described by Melton and making the admissions to Deputy Heil. The two daughters also disclaimed any wrongdoing.

## Contentions on Appeal

1. The superior court was without jurisdiction to convict appellant of the misdemeanor offense of contributing to the delinquency of a minor, because its jurisdiction depended upon that offense being connected in its commission with a burglary which the jury did not find had occurred.

2. The trial court erred in instructing the jury that each of the charges against appellant should be considered separately, since the superior court had jurisdiction to try the offense of contributing to the delinquency of a minor, only if that offense was connected in its commission with a burglary.

3. Appellant's rights under the Fifth and Sixth Amendments to the United States Constitution, made applicable to the states by the Fourteenth Amendment, were violated, because the trial court permitted the improper use by the jury of a statement obtained in violation of the rule of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

## Discussion

■ Apparently appellant concedes it is proper, under Penal Code section 954, to join felony and misdemeanor counts in an information for prosecution in the superior court where the felony and misdemeanor are connected in their commission, or if there is a common element of substantial importance in the commission of both offenses. She specifically concedes her misdemeanor conviction of contributing to the delinquency of her minor daughters would have been proper, had the jury also convicted her of the felony charge (burglary). In essence, she contends the superior court lacked jurisdiction to hear, determine and sentence on the misdemeanor charge, because the jury failed to arrive at a verdict on the felony charge. While conceding related felony and misdemeanor counts may be alleged in the same information, she maintains the superior court's jurisdiction to hear and determine the misdemeanor charge is dependent upon, and lacking without, a conviction of the felony charge. She cites no authority which supports the contention, and we are convinced the conclusion reached is based upon faulty reasoning.

Before *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr 366, 409 P.2d 206], the law was generally understood to prohibit joinder of misdemeanor and felony counts in an accusatory pleading for prosecution in the superior court.[1] In *Kellett,* the court pointed out Penal Code section

[1]See Bein, *Implementation of Kellett's Command; Joinder of Misdemeanors and Felonies in Superior Court,* 7 San Diego Law Review 1, 3. *Kellett* overruled *People*

954, providing for joinder of offenses, makes no distinction between felony and misdemeanor charges. Where misdemeanor and felony offenses are connected in their commission, or by a common element of substantial importance in their commission, the court interpreted section 954 as not only permitting joinder but, in effect, requiring it. It held separate prosecution of one such offense, resulting in either acquittal or conviction and sentence, would bar subsequent prosecution of the other offense. (*Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 827-828; *People* v. *McKerney,* 257 Cal.App.2d 64, 69-70 [64 Cal.Rptr. 614].)

The Supreme Court again considered the question of the superior court's jurisdiction over misdemeanors in *In re McKinney,* 70 Cal.2d 8 [73 Cal. Rptr. 580, 447 P.2d 972], and reiterated the exception to the general rule established in *Kellett.* At page 13, the court stated: "Authority both venerable and recent supports the general rule that a superior court has no jurisdiction over misdemeanor offenses. [Citations.]

"An exception to the general rule has been made by statute where the jurisdictional provisions relating to the superior court clash with a legislative requirement that all offenses 'connected together in their commission' be joined. Where a defendant is charged with both a felony and a misdemeanor, the superior court has jurisdiction to hear the misdemeanor case. (Pen. Code, § 954; *Kellett* v. *Superior Court,* 63 Cal.2d 822, 826, 827-828 [48 Cal.Rptr. 366, 409 P.2d 206]; see also, *People* v. *Hardin,* 256 Cal.App.2d Supp. 954, 961 [64 Cal.Rptr. 307].)"

By requiring the misdemeanor and felony charges to be "connected in their commission," or by "a common element of substantial importance in their commission," as a prerequisite to joinder, the court in *Kellett,* added no new or different requirement. Penal Code section 954 itself uses the words "two or more different offenses connected together in their commission," and the same requirement, expressed in the same or similar language, existed as the basis for joinder of felony counts in an accusatory pleading long before *Kellett.* (*People* v. *Scott,* 24 Cal.2d 774, 778-779 [151 P.2d 517]; *People* v. *Walker,* 112 Cal.App.2d 462, 471 [246 P.2d 1009]; *People* v. *Pike,* 58 Cal.2d 70, 84 [22 Cal.Rptr. 664, 372 P.2d 656].) Conviction of one or the other of the offenses charged has never been the test of whether the requirements of joinder have been met.

In *People* v. *Winchell,* 248 Cal.App.2d 580 [56 Cal.Rptr. 782], at page 589, the court states: *"Kellett* also establishes that the provisions of section

v. *Rodriguez,* 202 Cal.App.2d 191 [20 Cal.Rptr. 556], which had reached a contrary conclusion despite the holding of the earlier case of *People* v. *Bundte,* 87 Cal.App.2d 735 [197 P.2d 823].

954 of the Penal Code confer jurisdiction of a misdemeanor offense on the superior court where such an offense otherwise satisfies the test of joinder and can therefore be joined, with a felony offense over which the superior court has jurisdiction . . ." The word "commission" used in the phrase "two or more different offenses connected together in their commission," contained in Penal Code section 954, may not be interpreted as meaning conviction of either of the offenses is a prerequisite to proper joinder. At page 827 the court in *Kellett* states: "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause." We think it clear the superior court's jurisdiction over the misdemeanor charge, in the instant case, was established when it was joined in an information with a felony, and when the evidence demonstrated the same act or course of conduct played a significant part in both offenses *charged*. Appellant's activities in the Big Bear Market on January 15, 1968, were a substantial and significant part of both the felony and misdemeanor charges. Participating with her two minor daughters in the attempted thefts from the market made her liable to prosecution for contributing to the delinquency of a minor. The same acts made her liable to prosecution for burglary, if she entered the market with the intent to commit theft. Thus the same course of conduct played a signficant part in both offenses charged and they were properly joined.

Jurisdiction, in the sense here under consideration, has the same meaning in both civil and criminal cases. It relates to the fundamental power of the court to hear and determine the case before it. (21 Am.Jur.2d, Criminal Law, § 376, pp. 398-399; *Sherer* v. *Superior Court,* 96 Cal. 653, 654 [31 P. 565]; *People* v. *Stewart,* 107 Cal.App. Supp. 757, 762 [288 P. 57].) Once a court acquires jurisdiction of a cause, it retains it until the matter is disposed of. (*People* v. *Stewart, supra,* 107 Cal.App. Supp. 757, 762.) Jurisdiction to hear and determine a case cannot be made to depend upon its outcome.

Perhaps the fallacy of appellant's argument is best demonstrated by placing the case in a slightly different context. If the jury had been unable to reach a verdict on the felony, and had it acquitted appellant of the misdemeanor, could the People successfully contend the acquittal was of no force and effect, because jurisdiction was lost when the jury failed to convict on the felony charge? The answer is obviously no. Appellant is in no better position when she makes the reverse argument.

The trial court instructed the jury each count in the information charged a separate and distinct offense, must be considered separately

according to the law and the evidence applicable to that particular charge, and stated the defendant might be convicted or acquitted of either or both of the offenses charged. Appellant contends it was error to give the instruction, since the superior court had jurisdiction of the misdemeanor offense only if the offense was connected in its commission with the burglary.

The argument is in reality but an extension of appellant's first contention which we have already rejected. It warrants brief further discussion. Each count in an information stands by itself and should be considered independently by the jury in arriving at its verdict, according to the particular law and evidence which bears upon it. (*People* v. *Magee,* 217 Cal.App.2d 443, 468 [31 Cal.Rptr. 658]; *People* v. *Ray,* 187 Cal.App.2d 182, 188-189 [9 Cal.Rptr. 678]; *People* v. *Bias,* 170 Cal.App.2d 502, 510 [339 P.2d 204].) The rule should obtain irrespective of whether the counts joined are all felonies or a combination of felonies and misdemeanors. The question of whether the two offenses charged were sufficiently related to permit their joinder in the same information was a matter for the court to decide and not a question for jury determination. In any event, appellant's concern the instruction permitted the jury to consider other matters, not related to the burglary charge, in convicting her of contributing to the delinquency of her minor daughters, is unrealistic. Our review of the evidence indicates all the evidence introduced by the People bearing on the misdemeanor charge had to do with appellant's activities in the Big Bear Market on January 15, 1968. The same evidence was directly related to the charge of burglary.

■ Appellant's last contention[2] centers upon an alleged violation of her constitutional rights by the introduction into evidence of her admissions made to Deputy Heil, in response to questions asked after she had been informed of her *Miranda* rights and expressed a desire to remain silent. We do not reach this contention on the merits. Appellant was represented by experienced and capable trial counsel, who evidently chose not to interpose an objection to the evidence. The trial court was thus precluded from ruling on the objection and from preventing or remedying the alleged error. Claimed *Miranda* error may not be raised on appeal when no objection has been made at trial. The right to urge it is deemed to have been

---

[2]Without arguing it in her briefs, appellant also contends Penal Code section 272 is unconstitutionally vague and invites our discussion of the issue. We simply point out the same contention has been considered and rejected in many appellate court decisions considering the predecessor statutes to the present code section. (*People* v. *De Leon,* 35 Cal.App. 467 [170 P. 173]; *People* v. *Smith,* 189 Cal. 31, 43 [207 P. 518]; *People* v. *Deibert,* 117 Cal.App.2d 410 [256 P.2d 355]; *People* v. *Miller,* 145 Cal.App.2d 473 [302 P.2d 603].)

waived. (*In re Dennis M.,* 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Black,* 260 Cal.App.2d 646, 648 [67 Cal.Rptr. 360].)

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1970.